BAY COUNTY, *et al.,* v. STATE.

157 So. 1.
Opinion Filed September 26, 1934.

*Joseph W. Bailey, E. J. L'Engle* and *J. W. Shands,* for Appellants;

*C. R. Mathis,* State Attorney, and *J. H. Clancy,* for Appellee.

PER CURIAM.—A statutory proceding under Section 5106 (3296) C. G. L. and Section 3, Chapter 15772, Acts of 1931, Section 2383 (1) (39) Cum. Supp. C. G. L. 1934, was brought by Bay County to have validated by judicial decree refunding bonds proposed to be issued by the county under the statute in lieu of bonds heretofore issued by the county, known as Court House and Jail bonds. Section 2309

(1531) *et seq.* C. G. L.   An appeal was taken by the county from a decree of the circuit court denying the petition for validating the bonds.

Chapter 15772, Acts of 1931, authorizes refunding bonds to be issued by the county pursuant to resolutions adopted by the county commissioners in which they

"Shall determine the rate or rates of interest to be paid, not exceeding six per centum per annum, payable annually or at shorter intervals, and the maturity or maturities of the bonds which shall be at a time or times not exceeding sixty days from the date of the bonds (except that in the issuance of bonds of taxing districts where the maturities are fixed under the Constitution, then such maturities shall be in accordance with the maturities fixed in the constitutional provision), as well as determine the medium of payment and the place or places in Florida or any other State at which the principal and interest shall be payable. * * *   The right to redeem all or any of the bonds at par before maturity may be reserved upon terms and conditions to be fixed by resolution."

Counties have no inherent right or power to issue bonds to be paid by taxation; and bonds issued by counties under delegated authority should in every material particular comport with the authority conferred; otherwise they may not be of binding validity.

The statute authorizes refunding bonds to be issued pursuant to resolutions of the governing body of the taxing unit; and such resolutions should be in accord with the controlling provisions of law regulating the issue and payment of the bonds.

Refunding bonds are not only obligations in themselves for what they purport to be on their face and under the statutes pursuant to which they are issued, but are authorized extensions and continuations of the obligations repre-

sented by the bonds that are refunded. State v. Sholtz, 115 Fla. 561, 155 So. 736, 739.

The court decreed that the refunding bonds should not be validated because (1) Section 10 of the resolutions adopted by the county commissioners purports to pledge to the payment of the bonds the annual revenues of the county derived from race track receipts under Chapter 14832, Acts of 1931; (2) because Section 15 of the resolutions adopted by the county commissioners provides that

"insofar as it is legally possible, the officials of Bay County, Florida, shall require that delinquent taxes for the years 1930 and subsequent thereto, and that the taxes herein levied or hereafter to be levied, for the payment of the interest and principal of the Court House and Jail Refunding Bonds hereby authorized to be issued, shall be paid in lawful money of the United States of America, and that said County officials shall not accept nor authorize the acceptance of bonds and/or interest coupons in payment of delinquent taxes heretofore levied for the payment of the indebtedness refunded hereby, or delinquent taxes hereby levied or to be levied for the payment of such Court House and Jail Refunding Bonds herein authorized";

(3) because Section 18 of the resolutions provides that

"in case of default by the County in the performance of any agreements or obligations to the holders of the bonds herein authorized expressed in the bonds themselves or in the resolution authorizing their issuance, the County shall be permitted during a period of twelve months after the happening of such default or defaults to correct the same, and upon the inability or refusal of the county to make good such default or defaults within that period and upon declaration in writing filed with the County Clerk by the holders of at least twenty-five per cent. (25%) in principal amount of the Refunding Bonds then outstanding, all of said Re-

funding Bonds shall at the option of the respective holders revert to the original maturity date and interest rate of the securities for which said Refunding Bonds were originally issued, but such reversion shall only be effective from the date of the exercise of said option and Bay County agrees to substitute for such defaulted bonds or interest coupons, new bonds and coupons bearing such rate of interest and maturity."

The disposition of the revenues received by the county from race track receipts under Chapter 14832, Acts of 1931, is regulated by the statute which authorized the county commissioners to use such revenues for lawful funds when the moneys have been transmitted to the county commissioners which is required to be done each year. The statute does not contemplate that such race track receipts shall be pledged in the manner provided in the resolution of the board of county commissioners, and such resolution is inoperative for the purpose designed. See State v. County of Citrus this day filed as to the obligation and county refunding bonds under Amended Sec. 9, Constitution.

Section 17, Chapter 15772, Acts of 1931, provides that

"The resolution authorizing refunding bonds may assign, pledge, or set aside as a trust for the payment of principal or interest of refunding bonds or for a sinking fund for the bonds, subject to prior liens or contract obligations, and on, or subject to, such terms and conditions as may be stated, any unpaid taxes on assessments whether due or to grow due, and any revenues due or to grow due, or proceeds of sale of improvements or properties of the unit. The resolution authorizing the bonds may contain agreement to collect and pay over the moneys derived from such source."

The quoted provisions of Section 16 of the resolutions of the Board of County Commissioners to the effect that "Insofar as it is legally possible" the officials of Bay County,

Florida, shall require delinquent taxes for 1930 and subsequent years and taxes levied or to be levied for paying the refunding bonds "shall be paid in lawful money of the United States of America," etc., are not in conflict with, but comport with the above quoted Section 17, Chapter 15772, Acts of 1931. The purpose of the resolution is to preserve to the holders of the refunding bonds the same rights the holders of the refunded bonds had under the law, which is the intent of the statutes under which the bonds are authorized to be refunded.

Chapter 15772, Acts of 1931, authorizing refunding bonds provides in Section 3 that the resolutions "shall determine * * * the maturity or maturities of the bonds." Section 15 of the Act provides that:

"If the refunding bonds bear a lower rate of interest than the bonds for which they are exchanged, either the resolution authorizing the bonds or the refunding bonds themselves may provide that the refunding bonds shall bear the lower rate of interest only so long as the unit shall not be in default of any agreement or obligations to the holders and that after any such default, or at the option of the holders after any such default, the refunding bonds shall bear the same rate of interest as the bonds for which they were exchanged. The unit may impose limitiations on the right to exercise such option, and may provide that the option may only be exercised after a period of default, or by the holders of a certain amount or proportion of the bonds, all as provided in the said resolution or in the refunding bonds, and if the right to the higher interest accrues, may agree to substitute new bonds and coupons bearing such higher interest."

The provisions of Section 18 of the resolutions relating to acceleration of the *date of maturity,* of the refunding bonds are not authorized by the controlling statute. As the bonds can be validly issued only under authority duly con-

ferred and upon the terms and conditions prescribed by statute, the provision of Section 18 of the resolution insofar as it purports to authorize an *acceleration* of *the maturity dates* of the refunding bonds, is not authorized by or in accord with the statute; and such provision of the resolution should be disregarded in issuing the refunding bonds. The provision of Section 18 of the resolution that upon stated defaults and conditions the refunding bonds may "revert to the original interest rate of the securities" is authorized by Section 15, Chapter 15772, Acts of 1931.

The bonds are not shown to be invalid; but the resolutions upon which validation of the bonds was denied are unauthorized *to the extent as stated above.* If such resolutions be so amended by the county commissioners as to comport with this opinion, such refunding bonds may then be duly validated.

ON MOTION FOR MODIFICATION OF FOREGOING OPINION.

This cause having been submitted to the Court upon motion of counsel for a modification of the opinion filed here at the present term of the Court and same having been duly considered, it is ordered by the Court that the last line of the opinion filed in the said cause be changed so as to read as follows:

"This Court having found that the validation proceedings are legally insufficient to warrant a decree of validation on the present record, but that the illegal portions thereof pointed out in the opinion of the Court may be eliminated and a decree of validation entered in conformity to the opinion of this Court after the proceedings for the issuance and validation of the bonds in controversy have been so amended as to conform to the opinion of this Court, it is considered, ordered and adjudged that the decree appealed from be reversed and that the cause be remanded to the Cir-

cuit Court with directions to said Circuit Court to permit the filing in the Circuit Court of an amended and supplemental petition on the part of Bay County, Florida, embodying and setting up any resolutions that may be hereafter adopted by the Board of County Commissioners of the County aforesaid, modifying the resolutions under which the proposed refunding bonds are to be issued by eliminating from the bonds and the proceedings had for their issuance, the pledges and provisions held invalid by this Court in its opinion filed herein, to the end that the Circuit Court upon the filing of such amended and supplemental petition to conform to the opinion of this Court, may proceed with said validation proceedings to a judgment or decree in conformity with the holding of this Court on this appeal."

It is further ordered by the Court that judgment be entered in this cause in accordance with the foregoing amendment.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL and BROWN, J. J., concur.

BUFORD, J. (concurring specially).—I concur in most of what is said in the majority opinion, but I do not think the provisions of Sec. 17 of Chapter 15772 is valid insofar as it purports to authorize the pledging of funds and/or resources for the payment of refunding bonds which are in addition to and were not pledged for the payment of the bonds sought to be refunded unless such refunding issue shall have been authorized by vote of the electors of the bonding unit suit as provided in Section 6 of Article IX of the State Constitution.

It appears to me that if in refunding a bond issue the taxing unit purports to pledge for the payment of such refunding bonds and/or interest funds, property or resources not pledged for the payment of the bonds proposed to be refunded the result is that the bonds are issued not *exclu-*

*sively* for the purpose of refunding of the outstanding bonds and interest thereon, but is for the other and additional purpose of pledging what was not theretofore pledged to secure the payment of the debt. It is to add a value to the new obligation which did not obtain as to the original. It is a new and different contract pledging public funds and resources not theretofore pledged. It makes available to the holder of the refunding bond funds which were not available to him as holder of the original bond. See Babson v. City of Sebring, opinion filed June 5th, 1934, reported 155 Sou. 669.