STATE v. SPECIAL ROAD & BRIDGE DISTRICT No. 4 OF DeSOTO COUNTY, *et al.*

182 So. 583.
Opinion Filed July 6, 1938.

*Roy S. Stubbs* and *L. Grady Burton,* State Attorneys, for Appellant;

*W. D. Bell,* for Appellees.

BUFORD, J.—The appeal brings for review decree validating refunding bonds to be issued as the obligation of a Special Road and Bridge District.

Under date of May 15th, 1918, pursuant to the statutes then in effect, the Board of County Commissioners of DeSoto County issued for and on behalf of Special Road & Bridge District No. 4 of said County, certain bonds. At that time all of the territory of said Special Road & Bridge District No. 4 was embraced within said DeSoto County.

In 1921, by Chapter 8513, Acts of 1921, the Legislature of Florida created new counties out of the territory originally constituting DeSoto County and the boundaries of the counties were so fixed by said Act that the territory originally embraced within said Special Road & Bridge District No. 4 now lies partly in the County of DeSoto, partly in the County of Highlands, and partly in the County of Hardee.

Upon such county division taking place, the Boards of County Commissioners of all the counties involved held a joint conference at Arcadia, Florida, in October, 1921, and at said conference adopted a joint resolution whereby it was mutually agreed that each of said counties would pay its proportionate part of any and all bonded indebtedness of Special Road and Bridge Districts whose territory had been divided by the fixing of the new county lines, and that each county would levy upon the territory within it, its proportionate share of the taxes necessary to pay the indebtedness.

Following such conference, and on December 5th, 1921, a resolution was adopted by each of the counties involved

constituting an agreement between them with reference to the matters arising out of county division. Such contract or agreement between the counties with reference to Special Road & Bridge District No. 4 provided for an allocation of the remaining amounts due on the bond issue of said District, and an assumption by the three counties of their respective proportions of the remaining debt on the following basis, to-wit:

DeSoto County _____ 68.21%
Highlands County _____ 24.88%
Hardee County _____ 6.91%

It appears that the above proceedings were had pursuant to Section 7 of said Chapter 7513, Acts of 1921. The evidence introduced at the hearing held on May 25th, 1938, in the validation proceedings show that the Governor appointed three trustees for Special Road & Bridge District No. 4 in Highlands County in September of 1921. This was evidently under Section 8 of said Chapter 8413, Acts of 1921.

From the certificate of the Clerk of the Circuit Court for DeSoto County, it appears that there never were any trustees appointed with reference to that portion of the district lying in DeSoto County; and from the certificate of the Clerk of the Circuit Court of Highlands County, it appears that while the three trustees appointed by the Governor, and their successors, did purport to act, upon the creation of the State Board of Administration by Chapter 14486, Acts of 1929, the said trustees ceased to exist in accordance with the provisions of Section 3 of said Act of 1929.

From the certificate of the Clerk of the Circuit Court for Hardee County, it appears that no trustees were ever appointed with reference to that portion of the district embraced within Hardee County.

From the petition to validate the bonds, and the exhibits attached thereto, it appears that a resolution was passed by the Board of County Commissioners of DeSoto County authorizing the issuance of refunding bonds sought to be validated on behalf of Special Road & Bridge District No. 4 of DeSoto County. The resolution was passed by said Board of County Commissioners as the governing authority of such district, and provides for the issuance of Two Hundred Six Thousand ($206,000) Dollars refunding bonds, varying in interest rate from four (4) to five and one-half (5½) per cent.

The resolution authorizing the issuance of the refunding bonds purports to pledge the full faith, credit and taxing power of the said Special Road and Bridge District, to the same effect as the same had been pledged for the payment of the indebtedness refunded; and provides for an *ad valorem* annual tax levy in a sum sufficient to pay the interest, and beginning with the year 1948, in an amount sufficient to pay the interest and create a sinking fund; such tax to be levied upon all property embraced within the District, subject to taxation at the time of the issuance of the original bonds being refunded; and the proceeds of such taxes were, by said resolution, appropriated to be used exclusively for the purpose for which the same were levied; the said resolution further provided that the refunding bonds so authorized were declared to have the same security and source of payment as the indebtedness refunded, and were to constitute a continuation, extension, merger and renewal of the indebtedness so refunded.

The Board of County Commissioners of Hardee County, by resolution, consented to the refunding of the outstanding bonds of said district in the manner provided by the resolution adopted by the Board of County Commissioners of DeSoto County, and ratified and confirmed the original

agreement of December 5th, 1921, and agreed that so long as the refunding bonds so authorized should be outstanding, the Board of County Commissioners of Hardee County would continue to cause to be levied and collected such taxes as should be necessary and sufficient to meet the portion of the indebtedness represented by said refunding bonds as assumed by Hardee County under the terms of the said agreement of 1921. The Board of County Commissioners of Highlands County passed a similar resolution.

Upon the passage of the three resolutions mentioned above, these validation proceedings were instituted in the name of Special Road and Bridge District No. 4 of DeSoto County, Florida, the Board of County Commissioners of DeSoto County, and the individual members of such Board of County Commissioners against the State of Florida, by petition to validate said bonds. As exhibits to the petition were attached the resolutions passed by the Boards of County Commissioners of DeSoto, Hardee and Highlands Counties, as mentioned above.

The statutory order to show cause was issued upon the filing of the petition, directed to the State Attorney of the Twelfth Judicial Circuit in and for DeSoto County, and to the State Attorney of the Tenth Judicial Circuit in and for Hardee and Highlands Counties.

Acknowledgment of service by said State Attorneys was filed and the statutory notice to taxpayers and citizens, and to all others it may concern was duly published in all three counties.

The State, through the two State Attorneys, filed its answer requiring proof of the matter set forth in the petition, and alleging the invalidity of the bonds upon various grounds.

No petition for intervention was filed, nor was any other objection made.

A hearing on the petition and answer was held on May 25th, 1938, before the Circuit Judge, at which various certificates were introduced in proof of the facts contained in the petition.

Following the hearing, the Circuit Court entered its final decree, making certain findings of fact as therein set forth, drawing conclusions of law therefrom, and validating the refunding bonds involved.

Appeal was duly entered, and is now before this Court from such final decree.

The constitutional provisions involved are:

"*Article VIII. Section 3:* The Legislature shall have power to establish new counties, and to change county lines. Every newly established county shall be held liable for its proportion of the then existing liabilities of the county or counties from which it shall be formed, rated upon the basis of the assessed value of the property, both real and personal, subject to taxation within the territory taken from any county or counties; and every county acquiring additional territory from another county shall be held liable for its proportion of the liabilities of such other county existing at the time of such acquisition, to be rated upon the basis of the assessed value of all property subject to taxation within such acquired territory."

And also Section 1 of the Declaration of Rights, Section 10 of Article I of the Constitution of the United States and Section 1 of the Fourteenth Amendment to the Federal Constitution.

The statutory provisions involved are:

"(*a*) *Chapter 8513, Acts of 1921*, (the county division act).

"Section 7. It shall be the duty of the Board of County Commissioners of each of said new counties, and of the County of DeSoto, at as early a date as may be possible, to hold a conference or conferences, and agree upon a plan or plans for the assumption by each of said counties of its prorata share of the indebtedness of DeSoto County in accordance with the Constitution of the State of Florida, and also upon equitable division of the surplus funds and personal or movable property that DeSoto County may have on hand, not otherwise provided for in this Act; and also to agree upon a plan or plans for the distribution and disposition, and provisions for the payment of, any indebtedness of any Special Tax Road District or Districts, and also any indebtedness of any Special Road and Bridge District or Districts, the territory of which may be divided between any counties by this Act; and also for the division and distribution of any moneys, funds and other personal property of any such Special Tax Road Districts or Special Road and Bridge Districts.

"Section 8. Whenever the boundaries of any of said counties as herein given, shall divide any special tax road district or special road and bridge district, so much of any such district as shall be in each county shall constitute and be a separate district, and the Board of Trustees of any such District, a portion of which remains in DeSoto County, shall be and remain the Board of Trustees as to such portion for the remainder of their terms of office and it shall be the duty of the Governor of the State of Florida to appoint members of a Board of Trustees for any portion of such district as may be in any one of the new counties hereby established, or should portions of said District be in more than one of said new counties, as well as in DeSoto County, to appoint a Board of Trustees for each such portion or new district; said appointed members to hold office until

the election or appointment and qualification thereupon of their successors according to law. Should the boundaries of said new counties as given herein so divide any such district as not to leave any portion thereof in DeSoto County, each portion so divided shall constitute a separate district, and the Board of Trustees for said old district shall continue as trustees for the largest portion or new district into which said old district is divided, and the Governor of the State shall appoint a Board or Boards of Trustees for the other portion or portions as above provided.

"(b) *Chapter 15772, Acts of 1931,* The General Refunding Act of 1931.

"Section 2. Each county, city, town, special road and bridge district, special tax school district and other taxing districts in this State, herein sometimes called a unit, is hereby authorized to issue, pursuant to a resolution or resolutions of the governing body thereof (meaning thereby the board or body vested with the power of determining the amount of tax levies required for taxing the taxable property of such unit for the purpose of such unit), and either with or without the approval of such bonds at an election, except as may be required by the Constitution of the State, bonds of such unit for the purpose of refunding any or all bonds, coupons, or interest on any such bonds, or coupons, or paving certificates of indebtedness or interest on any such paving certificates of indebtedness, now or hereafter outstanding, or any other funded debt, all of which are herein referred to as bonds, whether such unit created such indebtedness or has assumed, or may become liable therefor, and whether indebtedness to be refunded has matured or to thereafter become matured."

"Section 30. Refunding bonds provided to be issued under this Act shall be subject to validation and judicial proceedings in like manner and with like force and effect

as bonds generally are provided to be validated by judicial proceedings under the laws of this State."

"Section 31. This Act shall be deemed to apply to taxing districts of every character and description provided for under the general or special laws of this State,' whether consisting of portions of a county or of a territory located in more than one county * * *."

"Section 33. No proceedings shall be required to be taken as to the issuance of any refunding bonds under this Act, except those prescribed by this Act, any provisions of any other laws, general or special, to the contrary notwithstanding."

Section 5106 C. G. L. 1927 provides for the filing of a petition against the State of Florida in the Circuit Court of the county in which proceedings authorizing the issuance of bonds have been had or taken in order to determine the authority of the taxing district to incur the bonded debt.

Section 5113 C. G. L. 1927 provides that where a taxing district petitioning for validation of a bonded debt extends into more than one county, or more than one judicial circuit, the Circuit Court of any county in which any part of such territory lies shall have jurisdiction of the cause.

Section 5114 C. G. L. 1927 provides that in the event the territory lies in more than one judicial circuit, the State Attorneys in each of said circuits shall be ordered to show cause at a time and place within a county in said circuit why said bonds shall not be validated; it then becomes the duty of the State Attorneys to examine the petition and make such defense as to him shall seem proper.

Section 5115 C. G. L. 1927 provides for a notice to taxpayers, citizens and others interested to be published in a newspaper in each of the counties in which any part of the territory of the district lies.

. The final decree entered by the Circuit Court was as follows:

"This cause coming on this day to be heard upon the Petition of Special Road and Bridge District No. 4 of DeSoto ·County, Florida, and others, for the validation by the Court of the Refunding Bonds described in said petition, pursuant to an order heretofore issued by this Court against the State of Florida, requiring it, through its State Attorneys for the Twelfth and Tenth Judicial Circuits of Florida, at the time and place therein designated to show cause why the said Refunding Bonds should not be validated and confirmed as prayed for in said petition, and the Court having now considered the petition and all proceedings had in this cause and the evidence adduced before the Court, and the Court having determined all the questions of law and of fact in the cause and being fully advised in the premises, finds the facts as follows:

"A. That a copy of the petition in this cause and of the order issued by this Court on the 26th day of April, 1938, against the State of Florida, requiring it, through the State Attorneys of the Twelfth and Tenth Judicial Circuits of said State, to show cause before this Court at the Courthouse in Arcadia, Florida, on the 25th day of May, 1938, at 11 o'clock A. M., why said bonds should not be validated and confirmed by decree of this Court as prayed in said petition, were duly served upon the said State Attorneys on the 28th day of April, 1938, said date being at least eighteen days before the date of hearing fixed in and by said order. ·

"B. That after the filing of the petition and the issuance of said order the Clerk of this Court caused to be published in The Arcadian, a newspaper published in said district, in DeSoto County, Florida, in the issues of said newspaper published respectively on April 28, May 5, May 12,

and May 19, 1938; in The Florida Advocate, a newspaper published in Hardee County, Florida, in the issues of said newspaper published respectively on April 29, May 6, May 13 and May 20, 1938; and in the Highlands County News, a newspaper published in Highlands County, Florida, in the issues of said newspaper published respectively on April 28, May 5, May 12 and May 19, 1938, (there being no newspaper published in those portions of said Special Road and Bridge District included within the boundaries of Hardee and Highlands Counties), a notice addressed to the taxpayers and citizens of said District requiring them at the time and place specified in said order for the hearing of this cause to show cause, if any they had, why said bonds should not be validated and confirmed, and that said notice was published once each week for at least three weeks before said hearing, the first publication thereof being at least eighteen days before said hearing.

"C. That the State of Florida, through its State Attorneys for the Twelfth and Tenth Judicial Circuits of said State, has filed its answer to said petition, presenting objections of law and of fact to the validation of said refunding bonds.

"D. That no citizen or taxpayer of the said Special Road and Bridge District No. 4 and no other person, firm or corporation, except the State of Florida, has attempted to show any cause why said refunding bonds should not be validated and confirmed by decree of this Court.

"E. That the statements of fact set forth in the petition herein are true.

"F. That all proceedings required by the laws of the State of Florida with respect to the authorization and issuance of the outstanding bonded indebtedness proposed to be refunded, and described in the petition in this cause were

taken by the governing body of said Special Road and Bridge District No. 4 and that all of said evidences of indebtedness were issued and outstanding prior to November 6, 1934, and are now outstanding and in the hands of bona fide holders for value.

"G. That homesteads as defined by Article X of the Constitution of Florida constitute a substantial part of the property value in said District.

"H. That the outstanding bonds of said District, dated May 15, 1918, which together with accrued and unpaid interest thereon to July 1, 1938, are proposed to be refunded, were duly validated and confirmed by final decree of the Circuit Court in and for DeSoto County rendered on the 15th day of May, A. D. 1918.

"I. That the Provisions of Section 8, Chapter 8,513, Laws of Florida, Acts of the 1921 Legislature, for the creation of new and separate special road and bridge districts out of such portions of said original Special Road and Bridge District No. 4 as were embraced within the boundaries of said newly formed counties of Hardee and Highlands established by said Act, and for a Board of Bond Trustees for each such portion or new district so created, were never put into effect, except in Highlands County, and the Board of Trustees for said District in said County went out of existence pursuant to the provisions of Section 3 of Chapter 14,486, Laws of Florida, Acts of the 1929 Legislature.

"As CONCLUSIONS OF LAW FROM THE FOREGOING FACTS, THE COURT FINDS:

"1. That this Court has jurisdiction of the subject matter of this cause, and of the parties hereto, including all the citizens and taxpayers of said Special Road and Bridge District No. 4.

"2. That all of the outstanding indebtedness described in the petition herein and authorized to be refunded by the resolution duly adopted by the Board of County Commissioners of DeSoto County, Florida, on April 19, 1938, and referred to in the resolutions duly adopted by the Boards of County Commissioners of Highlands and Hardee Counties, Florida, on April 19, 1938, and April 20, 1938, respectively, duly authenticated copy of each of which said resolution is attached to and made a part of the petition herein, constitutes valid subsisting bonded indebtedness of said District, and for the payment thereof said respective Boards are obligated to levy taxes without limitation of rate or amount upon all property within the territorial limits of the portions of said District embraced within the boundaries of said respective Counties, excepting only such property as was exempt from taxation under the laws and Constitution of Florida which were in force and effect at the time of the creation of said indebtedness.

"3. That under the Constitution and laws in force at the time of the issuance of the bonded indebtedness proposed to be refunded, homesteads were subject to taxation for the payment of the principal and interest of said bonded indebtedness, and taxes levied for such purpose were required to be collected and paid in cash at the same time and in the same manner as taxes levied for governmental and operating expenses, and such requirements pertain to the character and extent of the legal obligation of the bonds and constitute a material part of the contract with the bondholders.

"4. That there are no Boards of Trustees existing and functioning pursuant to the provisions of Section 8, Chapter 8513, Laws of Florida, 1921, and that there exists only one entity, the Board of County Commissioners of DeSoto County, Florida, as the governing authority of said Special

Road and Bridge District No. 4, to provide for the refunding of the outstanding indebtedness of said original District.

"5. That the General Refunding Act of 1931, being Chapter 15,772, Laws of Florida, 1931, and Section 6 of Article IX of the Constitution of Florida as amended in 1930, fully authorize the issuance of said refunding bonds, and their issuance has been duly provided for by the resolution properly adopted by the said Board of County Commissioners of DeSoto County, Florida, attached as 'Exhibit A' to the petition filed in this cause, and as supplemented by the resolutions properly adopted by the Boards of County Commissioners of Hardee and Highlands Counties, Florida, annexed to the petition and marked Exhibit B and Exhibit C, respectively.

"6. That the refunding bonds described in the petition herein and sought to be validated in this cause will, when issued in the manner provided in the resolution authorizing their issuance, evidence merely an extension or renewal in a new form of the original outstanding bonded indebtedness to be refunded, which original indebtedness will not be extinguished by, but will be merged in, the refunding bonds with like force and effect as to obligation as if the original bonded indebtedness had remained unrefunded by the issuance of such refunding bonds.

"7. That the covenants contained in the resolution adopted by said Board of County Commissioners of DeSoto County, Florida, for and on behalf of said Special Road and Bridge District No. 4, and ratified by the resolutions adopted by the Boards of County Commissioners of Hardee and Highlands Counties for and on behalf of the portions of said District embraced within the boundaries of said Counties, which said resolutions are annexed to the petition and marked 'Exhibit A', Exhibit B, and Exhibit C, respectively, to the effect that all rights and remedies for the en-

forcement of the indebtedness to be refunded by said refunding bonds will appertain to said refunding bonds, notwithstanding any restrictions and limitations thereon enacted by the Legislature of the State of Florida since the incurring of the indebtedness to be refunded thereby, are valid and binding upon said boards and said District, and are sufficiently referred to in the said refunding bonds.

"8. That the refunding bonds, when duly exchanged for the outstanding indebtedness referred to in the petition and in the resolutions attached thereto as Exhibits A, B, and C, will constitute a valid continuation and extension of the obligations of the bonded indebtedness so refunded, and that, notwithstanding the provisions of Section 7, Article X, of the Constitution of the State of Florida, and Chapter 17,060, Laws of Florida, 1935, the said Boards of County Commissioners of DeSoto, Hardee and Highlands Counties will be obligated to levy taxes, for the payment of said refunding bonds and interest thereon, upon all property subject to taxation for the payment of said outstanding bonded indebtedness, excepting only such property as was exempt from taxation under the laws and Constitution of Florida which were in force and effect at the time of the issuance of the original bonds; and that said refunding bonds will not be subject to any other legislation enacted by the Legislature of the State of Florida impairing or modifying the obligations of said Special Road and Bridge District No. 4 on the refunding bonds or the covenants and agreements contained in said resolutions providing for the issuance of the same, and that each and every of the covenants and agreements contained in said resolutions and in said refunding bonds is valid and binding upon said Boards of County Commissioners and upon said District.

"9. That the taxes to pay the principal of and the interest on said refunding bonds are required to be levied,

assessed and collected at the same time and in the same manner as taxes are levied, assessed and collected for current operating and governmental expenses of said Counties of DeSoto, Hardee and Highlands, State of Florida, and that such taxes, when levied, will be collectible and payable in cash only and may not lawfully be paid in bonds or interest coupons.

"10. That said refunding bonds authorized by the resolution annexed to the petition as Exhibit A, and referred to in the resolutions attached as Exhibits B and C to said Petition, have been properly authorized and will constitute negotiable instruments and that all matters, things, proceedings and conditions necessary to happen, be done, exist and be performed precedent to and in the issuance of said refunding bonds have happened, been done, exist and have been performed in due time, form and manner according to law, and that no cause has been shown why said refunding bonds should not be validated and confirmed.

"It Is Therefore Ordered, Adjudged and Decreed that the said refunding bonds be and the same are hereby validated and confirmed, said bonds being more particularly described as follows:

"Two hundred and six thousand ($206,000.00) Dollars Road and Bridge Refunding Bonds, of Special Road and Bridge District No. 4, DeSoto County, Florida, numbered 1 to 70 inclusive, in the denomination of $500.00 each, and numbered 71 to 241, inclusive, in the denomination of $1,000.00 each, said bonds being dated July 1, 1938, and maturing July 1, 1968, but subject to the right of redemption upon any interest payment date prior to maturity, in the manner provided therein; and bearing interest from date thereof until paid or until called for redemption, payable semi-annually on January 1 and July 1, which interest, subject to the reversionary provisions as set forth in

said bonds and in the resolution authorizing their issuance, is enforceable and collectible at the rate of four per cent (4%) per annum from the date of the bonds to July 1, 1943; at the rate of five per cent (5%) per annum from and including July 1, 1943, to July 1, 1948; and at the rate of five and one-half per cent (5½%) per annum from and including July 1, 1948, and thereafter; both principal and interest of said bonds are payable in lawful money of the United States of America at the Guaranty Trust Company, in the City of New York, New York."

The appellant contends that under Section 8 of Chapter 8513, Acts of 1921, there are now in existence three separate Special Road and Bridge Districts which together embrace the territory originally embraced in Special Road and Bridge Distirict No. 4 in DeSoto County and, therefore, the proceedings looking to the issuance of refunding bonds are invalid because of the lack of extra-territorial jurisdiction in the Board of County Commissioners of De-Soto County.

It is true that Section 8 of the Act so provides, but this provision cannot be applied either to bonds outstanding at the time of the county division or to refunding bonds issued in lieu of the outstanding bonds because to give the Act such application would violate Section 1 of the Declaration of Rights and Section 10 of Article I of the Federal Constitution.

It will be noted that Section 2 of Chapter 15,772, Acts of 1931, provides, in part:

"Each county, city, town, special road and bridge district, special tax school district, and other taxing districts in this State, herein sometimes called a unit, is hereby authorized to issue, pursuant to a resolution or resolutions of the governing body thereof (meaning thereby the board or body vested with the power of determining the amount of

tax levies required for taxing the taxable property of such unit for the purpose of such unit)." * * * etc.

Section 31 of that Act, the pertinent part of which is herein above quoted, provides that the Act shall be deemed to apply to taxing districts of every character and description provided for under the general or special laws of the State, whether consisting of portions of a county or of territory located in more than one county.

Section 7 of Chapter 8513, Acts of 1921, being the county division Act, made provision for the County Commissioners of the several counties affected to agree upon a plan or plans for the distribution and disposition, and provision for the payment of any indebtedness of any special tax road and bridge district, or districts, and also for any indebtedness of any special road and bridge district or districts, the territory of which may be divided between any counties by the Act. This was a necessary provision, that the Act might comply with Section 10, Article I, of the Federal Constitution and Section 1 of the Fourteenth Amendment to the Federal Constitution.

Bonds issued by a special tax road and bridge district come within the general classification of municipal bonds. Therefore, the enunciation by this Court in the case of City of Fort Lauderdale v. State, *ex rel.* Elston Bank & Trust Company, 125 Fla. 89, 169 Sou. 584, is applicable here, wherein it was held:

"1. When municipal bonds of class known as general obligations, payable from inexhaustible taxing power, are issued, holder is entitled to have pledged taxes levied, whenever necessary to pay bonds in full.

"2. Legislature cannot constitutionally release existing municipality from all liability for payment of validly incurred debts, though Legislature imposes liability therefor

on another public entity, unless creditor accepts new arrangement as novation extinguishing pre-existing promise, but so long as there is no default, action of Legislature cannot be complained of without showing of injury to creditor (Const. Declaration of Rights, Fla. Sec. 17; Const. U. S. Art. 1, Sec. 10).

"3. Legislative Acts purporting to release City of Fort Lauderdale from liability on its validly issued bonds, proceeds of which were for construction of port did not constitutionally release city where creditor did not accept arrangement, though Acts imposed payment of bonds on special taxing district (Sp. Acts 1927, c. 12562; Sp. Acts 1929, cc. 13940, 13941; Sp. Acts 1931, c. 15107; Sp. Acts 1935, cc. 17506, 17507; Const. Declaration of Rights, Fla., Sec. 17; Const. U. S. Art. 1, Sec. 10).

"4. General Act providing that taxes levied by cities for operating expenses and debt service requirements should be paid separately was no defense in proceeding against city to collect payments due on its bonds validly issued prior to Act (Sp. Acts 1927, c. 12562; Sp. Acts 1929, cc. 13940, 13941; Sp. Acts 1931, c. 15107; Sp. Acts 1935, cc. 17506, 17507; Gen. Acts 1935, c. 16838).

"5. Law affecting enforcement of municipal bonds becomes vital part of bond contract so that neither authority nor ability to perform contract may be impaired to any degree by subsequent legislation, whether designed to operate as impairment or not (Const. Declaration of Rights, Fla., Sec. 17; Const. U. S. Art 1, Sec. 10).

"6. A subsequently passed statute materially altering remedies originally afforded municipal bondholders for enforcement of bonds, unconstitutionally impairs obligation of bondholders' contract (Const. Declaration of Rights, Fla., Sec. 17; Const. U. S. Art. 1, Sec. 10).

"7. Where Legislature attempted to release City of Fort Lauderdale from liability on its validly issued bonds, and imposed liability on special taxing district, that bondholder of city accepted interest payments from district did not defeat proceeding against city to collect bonds, since it was duty of bondholder to accept interest from whatever source tendered (Sp. Acts 1927, c. 12562; Sp. Acts 1929, cc. 13940, 13941; Sp. Acts 1935, cc. 17506, 17507; Const. Declaration of Rights, Fla., Sec. 17; Const. U. S. Art. 1, Sec. 10).

"8. Though legislative Acts imposing liability for bonds of Fort Lauderdale on taxing district did not defeat bond-holder's right to collect on bonds from city, facts were not void but required district to pay bonds and to indemnify Fort Lauderdale for actions brought against it by bond-holders (Sp. Acts 1927, c. 12562; Sp. Acts 1929, cc. 13940, 13941; Sp. Acts 1931, c. 15107; Sp. Acts 1935, cc. 17506, 17507; Const. Declaration of Rights, Fla., Sec. 17; Const. U. S. Art. 1, Sec. 10)."

So it is seen that the Legislature of Florida cannot imperil the holders of outstanding bonds by segregating the district into three separate parts, each separate part being under the control of a different power and authority, but so far as those outstanding obligations or any renewal of those outstanding obligations for the purpose of payment thereof is concerned the district remained in its entirety just as it was before the County Division Act was passed.

The record shows that all applicable provisions of the statute have been complied with.

Another contention presented is that because of the provision in the bonds to the effect that upon default in compliance with certain covenants and conditions the refunding bonds shall revert to and bear the rate of interest borne by the original bonds. This is contemplated by Section 15 of Chapter 15772, which provisions were held valid by this

Court in the case of Bay County v. State, *ex rel.,* 116 Fla. 656, 157 Sou. 1, where we held:

"Under statute authorizing issuance of refunding bonds, provision in resolution of county commissioners relating to issuance of refunding bonds for court house and jail bonds that upon certain defaults and conditions refunding bonds may revert to original interest rate of securities *held* valid (Comp. Gen. Laws Supp. 1934, Sec. 2383 [15])."

The decree appealed from is without error and, therefore should be and is affirmed.

· So ordered.

Affirmed.

WHITFIELD, BROWN and CHAPMAN, J. J., concur.