**BRAZOS RIVER AUTHORITY, Relator,**

v.

**Waggoner CARR, Attorney General,
Respondent.**

No. A–11544.

Supreme Court of Texas.

July 27, 1966.

McCall, Parkhurst & Horton, Dallas,
Ray Hutchison, with above firm, Dallas,
Beard, Kultgen & Beard, Waco, for relator.

Waggoner Carr, Atty. Gen., Austin, Paul
Phy and Roy B. Johnson, Asst. Attys. Gen.,
for respondent.

STEAKLEY, Justice.

This is an original proceeding in which the Relator, Brazos River Authority, seeks a writ of mandamus to require the Respondent, the Attorney General of Texas, to approve the following two issues of bonds:

(a) Brazos River Authority 1966 Canal Revenue Bonds, Series A, dated March 1, 1966, authorized in the amount of $1,675,000, all to mature and become due on March 1, 2006, and to bear interest at the rate of 3% per annum to March 1, 1976, and thereafter at the rate of 3.667% per annum, evidenced by interest coupons maturing semiannually; and

(b) Brazos River Authority 1966 Canal Revenue Bonds, Series B, dated March 1, 1966, authorized in the amount of $3,050,000, all to mature and become due on March 1, 2006, and to bear interest as follows:

(i) 1% per annum evidenced by coupons due semiannually in specified amounts; plus

(ii) The interest due on supplemental coupons, due annually, and in which, by reference to the resolution authorizing the bonds, the Authority agrees to pay up to 2½% additional interest per annum to the extent net revenues are available therefor, on a non-cumulative basis, and, consequently, if not available the coupons due that year will be paid *pro tanto* and the remainder canceled.

The bonds are being issued for the following stated purpose:

"* * * acquiring unencumbered water transiting channels and facilities and equipment in connection therewith, located in Fort Bend, Harris, Brazoria and Galveston Counties, Texas, and rights, properties and assets in connection therewith * * *."

The properties referred to are owned by a private corporation, American Canal Company of Texas. A note of the corporation in the principal sum of $1,099,365.38 is held by some of its stockholders secured by a mortgage lien against the properties of the corporation. It is proposed that Relator acquire the properties of the corporation in a single transaction by the following procedure: Relator will deliver the bonds in question to the stockholders of the corporation in exchange for all of the capital stock of the corporation and the note of the corporation with its supporting mortgage will be cancelled, following which all of the properties of the corporation will be conveyed to Relator and the corporation will be dissolved. Neither the procedural authorization for the bond issues and the properties acquisition, nor the purposes therefor, is questioned. However, the proposal involves novel questions of law and the Attorney General declined to approve the bond issues for reasons stated as follows:

"1. The bond order provides that these bonds are to be exchanged for the capital stock of the American Canal Company of Texas, a corporation. There is no statutory authority for this transaction.

"2. The above stated exchange of bonds for the capital stock of a corporation is prohibited by Sections 50, 51, 52 and 53 of Article III and Section 3 of Article XI of the Texas Constitution.

"3. A portion of the bonds are to be used to purchase a note from certain private citizens. Such a transaction violates the Texas Constitution as it constitutes a loan of credit. This transaction is not consistent with the bonds' purpose clause and constitutes the issuance of bonds for a pre-existing debt.

"4. The supplemental coupons for the Series B Bonds provide for an indefinite, except as to maximum, interest rate. The resolution is silent as to any unqualified promise to pay these coupons. These

coupons are not negotiable instruments as they do not provide for payment of a sum certain. We are not aware of any previous approval of coupons of this type in the manner so provided."

The statutes governing Relator appear as footnotes to Article 8280–101, Vernon's Texas Civil Statutes. Section 11 was added to the governing statute by the 44th Legislature in 1935;[1] it provides in part:

"Section 11. The bonds issued by authority of this Act may either be (1) sold for cash, at public or private sale, at such price or prices as the Board of Directors shall determine, not to be for less than par and accrued interest, provided that the interest cost of the money received therefor, computed to maturity in accordance with the standard bonds tables in general use by banks and insurance companies, shall not exceed five (5%) per cent per annum, or (2) *may be issued on such terms as the Board of Directors shall determine in exchange for property of any kind,* real, personal or mixed or any interest therein which the Board of Directors shall deem necessary or convenient for any corporate purpose, or (3) may be issued to refund any bonds issued at any time under authority of this Act. All such bonds shall be authorized by resolution or resolutions of the Board of Directors concurred in by a majority of the members of the Board * * *." [Emphasis added.]

Section 5–c was added by the 53rd Legislature in 1953;[2] it provides in part:

"Sec. 5–c. In addition to all other powers Brazos River Authority is authorized to issue its negotiable revenue bonds for permanent improvements to accomplish its corporate purposes, payable from and secured by a pledge of its revenues to the extent and in the manner prescribed by the Board of Directors of the Authority. The provisions of Section 11 of Chapter 368, Acts of the First Called Session of the Forty-fourth Legislature shall govern the authorization, issuance and sale of such bonds except that:

"(1) The bonds may be sold at public or private sale, at such price or prices as the Board of Directors shall determine, provided that the interest cost of the money received therefor, computed to maturity in accordance with the standard bond tables in general use by banks and insurance companies, shall not exceed five per cent (5%) per annum; (2) Refunding Bonds bearing interest at rates averaging not more than five per cent (5%) per annum may be issued either in exchange for, or through sale thereof to provide funds to redeem or repurchase and retire bonds theretofore issued by the Authority. * * *"

■ We consider only the reasons which form the basis of the disapproval action of the Attorney General. Cf. Trinity River Authority of Tex. v. Carr, 386 S.W.2d 790 (Tex.Sup.1965). The first reason is the fact that the bond order provides that the bonds are to be exchanged for the capital stock of the American Canal Company of Texas, a corporation. Section 11, previously quoted, enacted in 1935, provides that bonds issued by the Authority may be on "such terms as the Board of Directors shall determine in exchange for property of any kind, real, personal or mixed or any interest therein which the Board of Directors shall deem necessary or convenient for any corporate purpose * * *." This is statutory authorization for the terms of the bond issues as a manner and method of acquiring the properties of the corporation, viz., by means of acquiring the stock, together with the concurring mechanics of the purchase transaction. It is the position of the Attorney General, however, that Section 5–c of the 1953 amendment exclusively prescribes the manner in which the bonds of the Authority

1. Acts 1935, 44th Leg., 1st C.S. p. 1527, ch. 368.

2. Acts 1953, 53rd Leg., R.S., p. 531, ch. 194.

might thereafter be issued and preclude what is here proposed. The applicability to Section 11 and Section 5-c of the maxim "expressio unius est exclusio alterius," is argued, the contention being that Section 11 is a general law, whereas Section 5-c is controlling as a special law. Our view is otherwise. Section 5-c expressly provides that the provisions of the section shall continue in effect except for the added provisions, and quite clearly was not intended to embrace all the authority governing the authorization, issuance and sale of bonds. The purpose of the 1953 amendment was to expand—not shrink or restrict—the powers of the Authority and there is no antagonism between the 1935 and the 1953 statutes. There is no basis for what in effect would be a repeal by implication. See Gordon v. Lake, 163 Tex. 392, 356 S.W.2d 138 (1962); Lasater v. Lopez, 110 Tex. 179, 217 S.W. 373 (1919).

■ The Attorney General is of the further view that the proposed exchange of bonds for the capital stock of American Canal Company of Texas, and the acquisition of the note of the corporation for cancellation, are violative of the following provisions of the Texas Constitution:

Art. 3, § 50. "The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State in aid of, or to any person, association or corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever, for the payment of the liabilities, present or prospective, of any individual, association of individuals, municipal or other corporation whatsoever."

Art. 3, § 51. "The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; * * *."

Art. 3, § 52. "The Legislature shall have no power to authorize any county,

city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company; * * *."

Art. 3, § 53. "The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part; nor pay, nor authorize the payment of, any claim created against any county or municipality of the State, under any agreement or contract, made without authority of law."

Art. 11, § 3. "No county, city, or other municipal corporation shall hereafter become a subscriber to the capital of any private corporation or association, or make any appropriation or donation to the same, or in anywise loan its credit; but this shall not be construed to in any way affect any obligation heretofore undertaken pursuant to law."

In view of the singleness of the proposed transaction, the coincident execution of its various parts, and the immediacy of the dissolution of the corporation, there is not in the sense of these constitutional provisions either a pledging of credit, or a grant of public money, for the payment of a private debt; nor will the Authority become a stockholder in a corporation.

■ The reasoning of the Court in Barrington v. Cokinos, 161 Tex. 136, 338 S.W.2d 133 (1960), is pertinent. Relator is not prohibited from business dealings with a private corporation, and a bond issue for direct accomplishment of purposes for which it was created is not rendered invalid by the fact that the method of handling the transaction is beneficial to the corporation and its stockholders. The latter receives no

gratuity. City of Aransas Pass v. Keeling, 112 Tex. 339, 247 S.W. 818 (1923). The contract and manner of consummation is no more than quid pro quo for that given up and received. San Antonio River Authority v. Shepperd, 157 Tex. 73, 299 S.W.2d 920 (1957). "No net gain accrues to" the corporation or its stockholders under the method of handling the acquisition of its properties by Relator. State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737 (1960). The abuses and results which the constitutional provisions under review were designed to prevent cannot occur here. In fact, the Authority will be enabled to acquire the properties at less cost than would be the case in a cash purchase transaction, even if such could be accomplished, and this redounds to the benefit of the public which is served by the Authority. See Cawood v. Coleman, 294 Ky. 858, 172 S.W.2d 548 (1943); Long v. Mayo, 271 Ky. 192, 111 S.W.2d 633 (1937); City of Springfield v. Monday, 353 Mo. 981, 185 S.W.2d 788 (1945); State ex rel. Johnson v. Consumers Public Power Dist., 143 Neb. 753, 10 N.W.2d 784, 152 A.L.R. 480 (1943); People ex rel. Murphy v. Kelly, 76 N.Y. 475 (1879); Wheeler v. City of Philadelphia, 77 Pa. 338 (1875). Cf. Pleasant Township v. Aetna Life Ins. Co., 138 U.S. 67, 11 S.Ct. 215, 34 L.Ed. 864 (1891); Sun Printing & Publishing Ass'n v. Mayor, etc., of New York, 152 N.Y. 257, 46 N.E. 499, 37 L.R.A. 788 (1897). The Authority is not entering into a joint venture with private enterprise or becoming a participating stockholder as in City of Tyler v. Texas Employers' Ins. Ass'n, 288 S.W. 409 (Tex.Com.App.1926), and Lewis v. Independent School Dist., 139 Tex. 83, 161 S.W.2d 450 (1942), upon which the Attorney General relies. Moore v. Myers, 282 S.W.2d 94 (Tex.Civ.App.1955, writ ref. n. r. e.), is disapproved to the extent of any conflict with our holding here.

The final reason assigned by the Attorney General for his disapproval rested upon the asserted nonnegotiability of the Series B Bonds supplemental coupons. The coupons in question pay to the bearer "an amount of interest (not exceeding 2½%) under the conditions and to the extent provided for in the resolution authorizing this issue of Revenue Bonds * * *." Section 4.03 of the resolution of May 24, 1966, of the Authority states:

"Supplemental coupons are payable solely from the Series B Supplemental Interest Fund established by this Resolution. To the extent that money is available in the Series B Supplemental Interest Fund it shall be applied to the full or pro rata payment of the next maturing Supplemental coupons; to the extent that Supplemental coupons are not so paid they shall be cancelled."

The Series B Bonds provide on their face:

"Brazos River Authority, a governmental agency and a body politic and corporate in the State of Texas for value received, hereby promises to pay to bearer on the 1st day of March, 2006, the principal sum of FIVE THOUSAND DOLLARS and to pay interest from the date hereof at the rate of 1% per annum evidenced by attached coupons to become due on March 1, 1967, and semi-annually thereafter on September 1 and March 1 of each year to maturity, and additional interest from December 1, 1966, at a rate not to exceed 2½% per annum in any one Fiscal Year, evidenced by Supplemental Coupons due on December 1, 1967, and annually thereafter on December 1 of each year except the final coupon which shall become due on March 1, 2006. Supplemental Coupons are payable solely from the Series B Supplemental Interest Fund established by the Resolution. To the extent that money is available in the Series B Supplemental Interest Fund it shall be applied to the full or pro rata payment of the next maturing Supplemental Coupons; to the extent that Supplemental Coupons are not so paid they shall be cancelled."

■ It is clear under both the Negotiable Instruments Law and the Uniform Commercial Code that the bonds and coupons in question are not negotiable instruments. Art. 5932, Section 1(2), V.A.C.S., of the Texas N.I.L. provided that:

"Sec. 1. An instrument to be negotiable must conform to the following requirements: * * * 2. It must contain an unconditional promise or order to pay a sum certain in money * * *."

As of midnight, June 30, 1966, the Texas N.I.L. was superseded by the Texas U.C.C., and Section 3–104(1) (b) thereof (acts 59th Leg., R.S.1965, ch. 721, p. 57) states:

"(1) Any writing to be a negotiable instrument within this Article must * * * (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article * * *."

The only exception authorized directly applicable to the coupons in question is that of Section 3–105(1) (g):

"(1) A promise or order otherwise unconditional is not made conditional by the fact that the instrument * * * (g) is limited to payment out of a particular fund or the proceeds of a particular source, if the instrument is issued by a government or governmental agency or unit * * *."

The requirement of a "sum certain" within the meaning of Section 3–104(1) (b) is defined by section 3–106, as follows:

"(1) The sum payable is a sum certain even though it is to be paid

(a) with stated interest or by stated installments; or

(b) with stated different rates of interest before and after default or a specified date; or

(c) with a stated discount or addition if paid before or after the date fixed for payment; or

(d) with exchange or less exchange, whether at a fixed rate or at the current rate; or

(e) with costs of collection or an attorney's fee or both upon default.

"(2) Nothing in this section shall validate any term which is otherwise illegal."

■ The resolution of the Board of Directors of the Authority authorizing the bond issue purported to declare the bonds negotiable; it reads:

"Section 5.03. NEGOTIABILITY. The Bonds shall constitute negotiable instruments under the Uniform Commercial Code. Nothing contained in the Bonds or in this Resolution shall affect or impair the negotiability of the Bonds."

To attain negotiability, however, the bonds with the interest obligation represented by the attached coupons must meet statutory requirements or fall under a statutory exception. See City of Erlanger v. Berkemeyer, 207 F.2d 832; 38 A.L.R.2d 918 (6th Cir. 1953); Hunter v. City of Louisville, 208 Ky. 326, 270 S.W. 841 (1925); Pulaski County v. Ben Hur Life Assn., 286 Ky. 119, 149 S.W.2d 738 (1941); State v. Special Road & Bridge Dist. No. 4, 133 Fla. 119, 182 So. 583 (1938); Bay County v. State, 116 Fla. 656, 157 So. 1 (1934). "It is not necessary that the exact language of the Code be followed in order to create a negotiable instrument; but a nonnegotiable instrument does not become negotiable merely because there is an expressed intent that it should be negotiable." Anderson, Uniform Commercial Code, Commentary § 3–104:3 (1961). See Pulaski County v. Ben Hur Life Assn., supra; Munro v. City of Albuquerque, 48 N.M. 306, 150 P.2d 733 (1943). See also Farnsworth, A General Survey of Article

3 and an Examination of Two Aspects of Codification, 44 Tex.L.Rev. 645, 647 (1966), where it is pointed out that Section 3–104 (1) of the U.C.C. sets forth formal requisites that need be complied with only if an instrument is to be negotiable "within this Article." Comment 1 to Section 3–104 of the U.C.C. explains that this "leaves open the possibility that some writings may be made negotiable by other statutes or by judicial decision."

■ We turn, then, to Section 5–c of the statute governing the Authority to determine if the bonds with the indefinite interest rate provisions, and the interest coupons corresponding thereto, have been declared statutorily negotiable. Section 5–c, enacted in 1953, reads in part:

"In addition to all other powers Brazos River Authority is authorized to issue its *negotiable revenue bonds* * * * payable from and secured by a pledge of its revenue to the extent and in the manner prescribed by the Board of Directors * * *." [Italics added]

When Section 5–c was added by the Legislature in 1953, negotiability *vel non* of bonds issued in Texas was determined by the N. I. L., of which Art. 5932, Section 3, provided:

"Sec. 3. An unqualified order or promise to pay is unconditional within the meaning of this Act, though coupled with: * * * 2. A statement of the transaction which gives rise to the instrument; but an order or promise to pay out of a particular fund is not unconditional."

Revenue bonds such as issued by the Authority were nonnegotiable under the N. I. L., because their interest and principal were payable solely out of the particular designated revenue fund which might not be sufficient to pay them. See Moore v. City of Nampa, 276 U.S. 536, 45 S.Ct. 340, 72 L.Ed. 688 (1928); 12 Am.Jur.2d, Bonds

§ 53. It is reasonable to conclude that the Legislature in the 1953 amendment added the term "negotiable" to make certain that the revenue bonds would be construed as negotiable despite the fact that they were payable out of a particular fund and were not general obligations. Cf. City of Erlanger v. Berkemeyer, supra. This statutory grant of negotiability has been codified in the U.C.C., in which a promise to pay is considered unconditional despite the fact that it is limited to a particular fund, if the promissor is a governmental agency or unit. Texas U.C.C., Section 3–105(1) (g).

While recognizing that the interest coupons are not negotiable in form as it is contended are the bonds themselves, Relator asserts that by the use in Section 5–c of the term "negotiable revenue bonds" the Legislature declared that all revenue bonds issued by the Authority are to be negotiable regardless of the nature of the obligation represented by the bonds, and that it may be implied that this legislative declaration of negotiability extends to interest obligations represented by interest coupons attached to the bonds. Alternatively, as to the latter, Relator contends that in any event the question is not one of negotiability of the coupons but of the power to issue bonds with interest coupons in such form as may be prescribed by the Board of Directors of the Authority. We disagree. In our opinion the legislative history of the statutes governing the Brazos River Authority will not support the proposition that the 1953 amendment adding Section 5–c has the effect of rendering the Series B Bonds negotiable, notwithstanding the nature of the interest payment obligation.

"Coupons attached to a bond are a part of it, affected by its infirmities, as well as endowed with its strength, and their character is not changed by detaching them from the bond without the consent of the purchaser thereof." See 2 Jones, The Law of Bonds and Bond Securities, § 602 (4th ed.

1935). Interest coupons not negotiable in form do not become negotiable instruments when separated from the bonds, although the bonds are themselves negotiable; and the purchaser of the detached interest coupons takes them subject to all defects in title. Interest coupons serve no independent purpose until negotiated and are mere incidents of the bonds while in the hands of the holder. 12 Am.Jur.2d Bonds § 56.

Finally we note that Section 11 of Acts 44th Leg., 1st C.S.1935, ch. 368, p. 152, provides that no bonds of the Brazos River Authority shall be issued and sold without prior approval by the Attorney General as having been issued in accordance with law. The statute further provides that such approval renders the bonds incontestable for any cause, and supports the legislative intent that bonds issued by the Authority are to be negotiable instruments in all respects. In City of Galveston v. Mann, 135 Tex. 319, 143 S.W.2d 1028 (1940), we underscored the reasons for prior approval by the Attorney General before county or municipal bonds may be issued and sold:

"The evident purpose of article 4398, R.C.S.1925, and other relevant statutes which impose the duty upon the Attorney General to pass upon the validity of bonds proposed to be issued by any municipality or political subdivision of this State, is not only to protect the particular locality and its inhabitants against the imposition of unauthorized or illegal obligations, but also to give assurance to the State Board of Eductaion and other intending purchasers of such bonds that if and when such bonds are so purchased, the purchaser will acquire an indefeasible title thereto. The duty thus imposed upon the Attorney General is important and is in no sense perfunctory."

The writ of mandamus is denied. No motion for rehearing will be entertained.