

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

August 5, 1974     *Overrules M-582 where conflicts*

The Honorable Grover E. Murray
President, Texas Tech University
P.O. Box 461
Lubbock, Texas   79409

Opinion No. H- 365

Re:  May Texas Tech University
· purchase group term life insurance
from a mutual company?

Dear President Murray:

Your request for our opinion indicates that Texas Tech University contracts with insurance companies to provide optional group term life insurance for its faculty and staff members, with the policies taken in the name of the university. A part of the premiums is paid by the university out of state appropriations and the balance is paid by payroll deductions. Your question is whether or not it is legally proper to permit mutual life insurance companies to bid on this insurance and to provide a nonassessable policy.

It has been suggested that the purchase of insurance from a mutual insurance company would run counter to the provisions of Subsection (a) of Section 52 of Article 3 of the Texas Constitution. That subsection prohibits "any county, city, town or other political . . . subdivision of the State" (emphasis ours) from becoming a stockholder in any corporation, association or company. And it has been held that this applies to prohibit a county or other political subdivision from purchasing insurance in a mutual insurance company. Attorney General Opinion O-924 (1939); City of Tyler v. Texas Employers' Insurance Association, 288 S.W. 409 (Tex. Comm. App., 1926), motion for rehearing overruled, 294 S.W. 195 (Tex. Comm. App., 1927); Lewis v. Independent School District of City of Austin, 161 S.W. 2d 450 (Tex. 1942).

Whether a state university, in general, or Texas Tech University in particular, is a "political subdivision of the State" is a question that has never been directly answered in Texas. Obviously, it is not a county, city or town. We believe that, within the purview and intent of Subsection (a) of Section 52 of Article 3 of the Texas Constitution,it is not a "political subdivision" either.

In Bolen v. Board of Firemen, Policemen, and Fire Alarm Operators, 308 S. W. 2d 904 (Tex. Civ. App., San Antonio, 1957, err. ref'd.), it was held that the constitutional provision did not limit the Board in its investment of pension funds. The Court said:

> The Board just simply is not a political corpora-
> tion nor a political subdivision of the State. It does
> not have any of the attributes of a political subdivision.
> A political subdivision contemplates: geographical area
> and boundaries, public elections, public officials, taxing
> power and a general public purpose or benefit. The
> Board has none of these attributes . . . (308 S. W. 2d
> at 905).

Citing an Idaho decision, the Court stated, as dictum: "The Board of Regents of a State University is not a political subdivision of the State." (308 S. W. 2d at 906). See Attorney General Opinion H-338 (1974).

It has been said that the primary function of a municipal corporation is to regulate and administer the internal concerns of the inhabitants of a defined locality in matters peculiar to the place incorporated and not common to the people of the state at large. Hatcher v. State, 81 S. W. 2d 499, 500 (Tex. 1935).

In Welch v. State, 148 S. W. 2d 876, 879 (Tex. Civ. App., Dallas, 1941, err. ref'd.), a municipal corporation is defined as a:

> ' . . . body politic and corporate constituted by the
> incorporation of the inhabitants of a definite

> locality for the purposes of local government - the
> organization of a certain geographical district under
> authority of law. '

We believe that the better view is that, within the purview and intent of Subsection (a) of Section 52 of Article 3 of the Texas Constitution, a state university is an official arm of the State, and not a political subdivision.  That this distinction should be considered between the state and its agencies, on the one hand, and political subdivisions, on the other, is borne out by the recent enactment of Articles 8309g and 8309h of the Civil Statutes (Acts 1973, 63rd Leg., ch. 88, p. 195) recognizing and applying separately to the two groups of governmental entities. Article 8309g provides for workmen's compensation for state employees and includes in that group employees of institutions of higher education. Article 8309h applies to employees of a political subdivision, defined to mean "a county, home-rule city, a city, town, or village organized under the general laws of this state, a special district, a school district, a junior college district, or any other legally constituted political subdivision of the state." Sec. 1(1).

When the facts surrounding this particular contemplated transaction are analyzed from a "lending of credit" or "grant of public funds" standpoint, it does not appear violative of the provisions of Sections 50 and 51 of Article 3 of the Texas Constitution.  The only obligation of a policyholder in a legal reserve mutual company operating under Chapter 11 of the Insurance Code of Texas is the contractual obligation to pay the initial premium, the same burden a policyholder would have with a stock life insurance company.  Lending of credit is prohibited if there is a possibility of assessment liability.  No provision for additional assessments is included in the policies issued by legal reserve mutual companies operating under Chapter 11, supra, so no lending of the University's credit is involved. City of Tyler, supra.

The "grant of public money" prohibition contemplates a "gratuitous appropriation of public money or property." City of Tyler, supra at 412. Texas Insurance Code, Article 3. 51, Sec. 1(a), authorizes the governing board of a university to purchase insurance for its employees.  The payment of insurance premiums is part of the compensation paid the employees,

and is for a constitutional public purpose. It is not a gratuitous appropriation; see Byrd v. City of Dallas, 6 S.W. 2d 738 (Tex. 1938); Attorney General Opinions M-125 (1967) and M-582 (1970). Later decisions have firmly established that when an expenditure of public funds is made for the direct accomplishment of a proper public purpose resulting in public benefits, the exchange is not gratuitous, even though private persons may incidentally benefit therefrom. See Barrington v. Cokinos, 338 S.W. 2d 133 (Tex. 1960); Brazos River Authority v. Carr, 405 S.W. 2d 689 (Tex. 1966); State v. City of Austin, 331 S.W. 2d 737 (Tex. 1960).

Under the particular facts here, no impermissible lending of credit or grant of public funds will occur in violation of Article 3, Secs. 50 and 51 of the Texas Constitution. Texas Tech University is not within the scope of Article 3, Sec. 52(a) of the Texas Constitution, as the University is not, within the purpose and intent of those sections, a political corporation or political subdivision. To the extent that it may conflict with this opinion, Attorney General Opinion M-582 (1970) is overruled.

## SUMMARY

Texas Tech University may purchase nonassessable group term life insurance policies for its faculty and staff issued by mutual life insurance companies authorized by Chapter 11 of the Texas Insurance Code.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee