CITY OF LAKE WORTH v. STATE.

184 So. 681.
Opinion Filed November 18, 1938.

*McCoy & Love,* for Appellant;

*Louis F. Maire,* State Attorney, and *Phil O'Connell,* Assistant State Attorney, for Appellee.

PER CURIAM.—Pursuant to a resolution duly adopted by the City Commission of the City of Lake Worth, Florida, the pertinent parts of which are as follows:

"WHEREAS, the City of Lake Worth has outstanding a valid funded indebtedness hereinafter more particularly described and a considerable part of such indebtedness and interest thereon has matured and the balance thereof and additional accruals of interest thereon will mature in such amounts and at such times as to impose upon the City too great a burden for it to meet and it is in the interests of the City and its creditors that such indebtedness be readjusted and refunded, and

"WHEREAS such indebtedness was incurred prior to November 6, 1934, and the holders thereof by virtue of the laws in existence at the time of the incurring of such indebtedness have the legal right to require that taxes for the payment thereof be levied on all property subject to taxation including homesteads exempted from taxation by the amendment ratified November 6, 1934, adding Section 7 to Article X of the Constitution of Florida, and to require the collection of such taxes in cash at the same time and in the same

manner as other taxes levied by the City and to otherwise enforce their indebtedness and the security therefor independently of any restrictions or limitations upon the enforcement thereof enacted by the State Legislature since the incurring of such indebtedness, and while a considerable number of such creditors are willing to extend the maturities of such indebtedness and agree to a reduction in interest thereon, nevertheless and they are not willing to so readjust and refund such indebtedness unless the refunding obligations issued in exchange therefor have the same security and are entitled to the same remedies and rights of enforcement as existed prior to November 6, 1934, and now appertain to said outstanding indebtedness, and

"WHEREAS, in order to permit of a readjustment and refunding that will be acceptable to its creditors, the City deems it advisable and necessary to authorize the issuance of refunding bonds under such terms and conditions as will reserve to the holders thereof the rights, security and remedies now available to them as holders of the City's present outstanding indebtedness.

"Now, THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF LAKE WORTH:

"SECTION 1. It is hereby found and determined that the following described indebtedness aggregating in principal amount the sum of $3,998,568.72 constitutes a valid outstanding funded indebtedness of the City of Lake Worth incurred prior to November 6, 1934, for various municipal purposes and that for the payment thereof, all property within the present territorial limits of the City of Lake Worth, excepting only such property as was exempted from taxation by the Constitution of Florida, as it existed immediately prior to November 6, 1934, is subject to taxation without limitation of rate or amount:

PRINCIPAL AMOUNT OF FUNDED INDEBTEDNESS

| Description of Indebtedness | | Amount |
|---|---|---|
| 6% Water Works and Electric Light Bonds, Issue of December 31, 1914 _____ | | $6,550.00 |
| 6% Electric Light Bonds, Issue of January 15, 1916 | | |
| *Bonds numbered 1, 2, 8, 9 and 10 _____ | 5,000.00 | |
| Bond numbered 3_____ | 1,000.00 | 6,000.00 |
| 6% Water Works Bonds, Issue of January 15, 1916, . | | |
| *Bonds numbered 11, 12, 13 and 14 _____ | 4,000.00 | |
| Bonds numbered 8, 9, 15, 16, 17, 18, 19 and 20_____ | 8,000.00 | 12,000.00 |
| 6% Sea Wall Bonds, Issue of January 1, 1917 | | |
| *Bonds numbered 4 and 5 | 2,000.00 | |
| Bonds numbered 6 to 15 inclusive, 17, 20, 21 and 25 | 14,000.00 | 16,000.00 |
| 6% Light and Water Works Bonds, Issue of March 1, 1919 | | |
| *Bond numbered 3 _____ | 1,000.00 | |
| Bonds numbered 4, 5 and 6 | 3,000.00 | 4,000.00 |
| 6% Street Improvement and Park Bonds, Issue of March 1, 1919 | | |

| | | | |
|---|---|---|---|
| | *Bonds numbered 4 and 5 | 2,000.00 | |
| | Bonds numbered 2, 3, 6 to 19 inclusive, and 21 to 24, inclusive _____ | 20,000.00 | 22,000.00 |
| | | | |
| 6% | Improvement Bonds, Series A, Issue of October 1, 1919 _____ | | 9,000.00 |
| 6% | Improvement Bonds, Series B, Issue of October 1, 1919 | | 3,000.00 |
| 6% | Park and Playground Bonds, Issue of June 1, 1921 *Bonds numbered 3, 4, 7, 8, 9, 10, 16, 18, 19, 20, 24 and 26 to 30 inclusive, each in the amount of $500.00____ | 8,000.00 | |
| | Bonds numbered 32, 34, 42 to 51 inclusive, 53, 54 and 56 to 65 inclusive, each in the amount of $1000.00__ | 24,000.00 | 32,000.00 |
| 6% | Ocean Front Park Improvement Bonds, Issue of November 1, 1920 *Bonds numbered 2 to 15 inclusive, and 25 to 30 inclusive _____ | 20,000.00 | |
| | Bonds numbered 1, 19, 21 to 24 inclusive, 31 to 65 inclusive, 74 and 91 to 100 inclusive _____ | 52,000.00 | 72,000.00 |

<table>
<tr><td>6% Light and Water Works Bonds, Issue of June 1, 1921<br>Bonds numbered 1 to 40 inclusive, each in the amount of $500.00 _____</td><td>20,000.00</td><td></td></tr>
<tr><td>Bonds numbered 41 to 95 inclusive, each in the amount of $1,000.00 _____</td><td>55,000.00</td><td>75,000.00</td></tr>
</table>

6% Improvement Bonds, Issue
 of April 1, 1923
 *Bonds numbered 55 to 63
 inclusive, and 70 to 72 in-
 clusive, each in the amount
 of $500.00 _____ 6,000.00

6% Bonds numbered 64 to 69
 inclusive, 81, 82 and 84 to 90
 inclusive, each in the amount
 of $500.00 _____ 7,500.00 13,500.00

6% Improvement Bonds, Issue
 of January 1, 1924 _____ . 13,000 00

6% Water Works and Light
 Bonds, Issue of October 1,
 1923
 *Bonds numbered 5, 6, 8
 and 9 _____ 4,000.00

 Bonds numbered 7, 10 to
 15 inclusive, 19 and 20___ 9,000.00 13,000.00

6% Refunding Bonds, Issue of
 October 1, 1923

| | | |
|---|---|---|
| *Bonds numbered 4, 6, 7 and 8 _____ | 4,000.00 | |
| Bonds numbered 3, 5, 10 to 13 inclusive, 18 and 21 to 25 inclusive _____ | 12,000.00 | 16,000.00 |
| 6% Street Bonds, Issue of October 1, 1923 | | |
| *Bonds numbered 3, 4, 6 and 7 _____ | 4,000.00 | |
| Bonds numbered 2, 5, 8, 9, 10, 12 and 13 _____ | 7,000.00 | 11,000.00 |
| 6% Electric Light and Water Works Bonds, Issue of May 1, 1924 _____ | | 100,000.00 |
| 6% Improvement Bonds, Issue of October 1, 1924 | | |
| *Bonds numbered 54 to 67 inclusive _____ | 14,000.00 | |
| Bonds numbered 40 to 44 inclusive, and 51 to 53 inclusive _____ | 8,000.00 | 22,000.00 |
| 6% Improvement Bonds, Issue of January , 1925 _____ | | 303,000.00 |
| 6% Improvement Bonds, issue of December 1, 1924 | | |
| *Bonds numbered 32 to 42 inclusive, 50 to 54 inclusive | 16,000.00 | |
| Bonds numbered 20 to 31 inclusive _____ | 12,000.00 | 28,000.00 |

6% Improvement Bonds, Issue of January 1, 1925

*Bonds numbered 15, 17, 18, 19, 21, 22 and 26 to 31 inclusive _____ 12,000.00

Bonds numbered 20, 23, 24, 25 _____ 4,000.00 16,000.00

6% General Improvement Bonds, Issue of April 1, 1925

*Bonds numbered 1 to 25 inclusive, 50 to 53 inclusive, 60 to 73 inclusive, 113, 115 to 120 inclusive, 146 to 148 inclusive, 186 to 191 inclusive, 200 to 204 inclusive, 216 to 228 inclusive, 231 to 236 inclusive, 240 to 242 inclusive, 248 to 250 inclusive, 281 to 284 inclusive, 302 to 306 inclusive, 308, 326 to 336 inclusive, 351 to 415 inclusive, 417, 431 to 446 inclusive, 466 to 481 inclusive, and 487 to 500 inclusive _____ 222,000.00

Bonds numbered 33 to 35 inclusive, 37 to 43 inclusive, 45, 54, to 58 inclusive, 79 to 94 inclusive, 151, 153, 156 to 185 inclusive, 199, 229, 230, 237, 238, 239, 243 to 247, in-

clusive, 251 to 280 inclusive, 290 to 301 inclusive, 307, 309 to 325 inclusive, 337 to 350 inclusive, 416, 447, 455 to 464 inclusive, 501 to 555 inclusive, 562 to 570 inclusive, 585 to 605 inclusive, 626 to 641 inclusive, 647, 665 to 674 inclusive, 711 to 726 inclusive, 729, 731, 732, 740, 741, 742, 748, 751, 757, to 784 inclusive, 795 to 808 inclusive, 812 to 840 inclusive, 846 to 948 inclusive, 962, 963, 965 to 1000 inclusive, 1002, 1021 to 1072 inclusive, 1082 to 1095 inclusive, 1101 to 1111 inclusive, 1124 to 1131 inclusive, 1133 to 1138 inclusive, 1149 to 1245 inclusive ___ 698,000.00 920,000.00

6% Improvement Bonds, Issue of May 15, 1926
 *Bonds numbered D 14 to D 91 inclusive and D 95 to D 99 inclusive _____ 83,000.00
 Bonds numbered D 92 to D 94 inclusive _____ 3,000.00 86,000.00

6% Improvement Bonds, Issue of May 15, 1926
 *Bonds numbered F 7 to

F 39 inclusive and F 42
to F 51 inclusive _____ 43,000.00
Bonds numbered F 40 and
F 41 _____ 2,000.00 45,000.00

6% Improvement Bonds, Issue
 of May 15, 1926
 *Bonds numbered G 2, G 4
 to G 10 inclusive _____ 8,000.00

6% Improvement Bonds, issue
 of July 1, 1926
 *Bonds numbered E 50 to
 E 60 inclusive, E 100 to
 E 110 inclusive, E 139
 to E 144 inclusive, E 150
 to E 161, inclusive, E 189
 to E 194 inclusive, E 200
 to E 210 inclusive, E 238
 to E 243 inclusive, E 250
 to E 280 inclusive, E 288
 to E 293 inclusive, E 301,
 E 320 to E 323 inclusive,
 E 327 to E 329 inclusive,
 E 411, E 413 to E 422 in-
 clusive, E 422 and E 443 121,000.00
 Bonds numbered E 81 to E
 88 inclusive, E 131, E 132,
 E 137, E138, E 162 to E
 164 inclusive, E 184 to E
 188 inclusive, E 231 to E
 236 inclusive, E 281 to E
 287 inclusive, E 325, E
 326, E 330, E 332 to E

343 inclusive, E 382 to E.
391 inclusive, E 432 to E
437 inclusive, and E 482
to E 487 inclusive ＿＿＿＿＿＿ 70,000.00 191,000.00

6% Improvement Bonds, Issue
 of October 1, 1926
 *Bonds numbered 32 to 37
 inclusive, 50 to 68 inclu-
 sive, 79, 81 to 104 inclu-
 sive, 110 to 126 inclusive,
 132 to 148 inclusive, 151
 to 194 inclusive, and 200
 to 283 inclusive ＿＿＿＿＿＿＿＿＿ 212,000.00
 Bonds numbered 42 to 46
 inclusive, 69 to 78 inclu-
 sive, 105 to 109 inclusive,
 and 284 to 315 inclusive 52,000.00 264,000.00

6% Improvement Bonds, Issue
 of October 15, 1926
 *Bonds numbered 23 to 26
 inclusive, 32, 33, 35 to 42
 inclusive, 58 to 63 inclu-
 sive, 65 to 77 inclusive, 81
 to 95 inclusive, 97 to 153
 inclusive, 159 to 173 inclu-
 sive ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿ 120,000.00
 Bonds numbered 34, 96
 and 174 to 193 inclusive＿＿ 22,000.00 142,000.00

6% Improvement Bonds Issue
 of October 15, 1926
 *Bonds numbered 1 to 17

inclusive, 23 to 33 inclusive, 39 to 50 inclusive, 56 to 83 inclusive, 89 to 94 inclusive, 100 to 119 inclusive, 121 to 131 inclusive, 133 to 137 inclusive, and 139 to 148 inclusive ____ 120,000.00

Bonds numbered 95 to 99 inclusive, 132 and 150 to 163, inclusive _____ 20,000.00 140,000.00

6% Improvement Bonds, Issue of December 15, 1926

*Bonds numbered 1, 7, 8, 41, 47 to 54 inclusive, 59 to 63 inclusive, 65 to 72 inclusive, 83 to 90 inclusive, 96 to 108 inclusive, 114 to 126 inclusive ____ 59,000.00

Bonds numbered 19, 29, 30, 35, 43, 56, 80, 81, 82, 91, 92, 109 to 113 inclusive, 163 and 168 to 180 inclusive _____ 30,000.00 89,000.00

6% Improvement Bonds $134,-000.00 Issue of January 15, 1927

*Bonds numbered 6 to 9 inclusive, 14 to 73 inclusive, and 76 to 121 inclusive__ 110,000.00

Bonds numbered 123 ____ 1,000.00 111,000.00

6% Improvement Bonds $223,-000.00 Issue of January 15, 1927

 *Bonds numbered 4 to 11 inclusive, 15 and 23 to 201 inclusive _____ 188,000.00

 Bonds numbered 202 to 211 inclusive, and 222____ 11,000.00 199,000.00

6% Improvement Bonds, $188,-000.00 Issue of March 15, 1927

 *Bonds numbered 8, 9, 10, 14 to 95 inclusive, 101 to 108 inclusive, and 114 to 170 inclusive _____ 150,000.00

 Bonds numbered 171 to 188 inclusive _____ 18,000.00 168,000.00

6% Improvement Bonds $152,-000.00 Issue of March 15, 1927

 *Bonds numbered 1 to 12 inclusive, 17 to 30 inclusive, 32 to 45 inclusive, 47 to 60 inclusive, 62 to 75 inclusive, 77 to 90 inclusive, 92 to 105 inclusive, and 107 to 135 inclusive _____ 125,000.00

 Bonds numbered 137 to 151 inclusive _____ 15,000.00 140,000.00

6% Improvement Bonds, Issue of March 20, 1927

| | | |
|---|---|---|
| *Bonds numbered 32 to 93 inclusive _____ | 62,000.00 | |
| Bonds numbered 95 to 104 inclusive _____ | 10,000.00 | 72,000.00 |
| 8% Improvement Certificates of Indebtedness of February 24, 1925, and various prior date _____ | | 5,477.99 |
| 8% Improvement Certificates of Indebtedness of July 15, 1927 _____ | | 41,813.48 |
| 6% Judgment rendered February 6, 1931, in the United States District Court for the Southern District of Florida in that certain cause in which R. M. Grant and Company was Relator and City of Lake Worth, Florida, Respondent _____ | | 306,594.74 |
| 6% Judgment rendered February 6, 1931 in the United States District Court for the Southern District of Florida in that certain cause in which A. V. O'Brien trading as A. V. O'Brien and Company, was Relator and City of Lake Worth, Florida, Respondent _____ | | 75,756.17 |
| 6% Judgment rendered February 6, 1931, in the United | | |

States District Court for the Southern District of Florida in that certain cause in which R. G. Lassiter and Company was the Relator and City of Lake Worth, Florida, Respondent _____ 200,876.34

TOTAL 3,998,568.72

* These obligations have been reduced to judgment.

"It is further found and determined that interest accrued to November 1, 1936, on the principal amount of indebtedness above described and computed at the rates prescribed in the above described obligations now remains unpaid in the aggregate sum of $1,204,668.68.

"SECTION 2. Refunding Bonds Series A, in the principal face amount of $3,998,568.72 and Refunding Bonds Series B, in a like principal face amount are hereby authorized to be issued for the purpose of refunding the indebtedness described in Section 1 hereof and unpaid interest accrued thereon to November 1, 1936, and any judgments that may be hereafter recovered thereon. There shall be delivered to each holder of outstanding principal indebtedness described in Section 1 hereof Refunding Bonds, Series A, in a principal face amount equal to the principal amount of such outstanding indebtedness so held by such creditor upon the surrender of and in exchange for such outstanding indebtedness and all claims for unpaid interest accrued thereon to November 1, 1936. There shall be delivered to the Manufacturers Trust Company, New York City, N. Y., for the benefit of the holders of Series A Refund Bonds a principal amount of Series B Refunding Bonds equal to the principal amount of said Series A Refunding Bonds and said Manu-

facturers Trust Company shall hold said Series B Refunding Bonds for the use and benefit of the holders of Series A Refunding Bonds in the manner hereinafter directed. Said Refunding Bonds shall obligate the City to pay the principal face amount thereof and interest thereon as therein provided in any event and also to pay the additional amount representing unpaid interest accrued to November 1, 1936, on the outstanding principal indebtedness described in Section 1 in the event the City should for any reason default in the payment of any semi-annual installment of interest or any sinking fund payment as hereinafter required and remain in default for more than one year, or in the event the City should default in the payment of the principal of said bonds at maturity. Such additional amount shall be due and payable immediately upon a default in the payment of principal at maturity and in the event of a default in the payment of any semi-annual installment of interest or any sinking fund payment such additional amount shall be due and payable immediately upon the expiration of one year from the date of such default. There shall be attached to each of said Refunding Bonds, Series B, certificates evidencing the obligation of the City to pay such additional amount, in the event of such default upon presentation and surrender of said certificates. The amount of such additional payment to be made on account of each Refunding Bond Series B, in the event of any such default and to be evidenced by a certificate attached thereto shall be hereafter fixed and determined by resolution of the City Commission provided that the aggregate amount of such additional payments shall not exceed the amount of unpaid interest accrued to November 1, 1936, on the principal amount of outstanding indebtedness to be refunded hereunder as set forth in Section 1 hereof. Any of the outstanding indebtedness described in Section 1 hereof that may now or hereafter be reduced to judgment

shall be refunded in the same manner and on the same basis as though such indebtedness had not been reduced to judgment and in this connection, interest thereon will be computed at the rate prescribed by the bonds or obligations reduced to judgment, but in no event in excess of 6% per annum and interest on interest shall be excluded.

"Said Refunding Bonds, Series A, shall be dated November 1, 1936, shall mature November 1, 1966, but shall be subject to redemption on any interest payment date prior to maturity upon payment of the principal face amount thereof and accured interest to the date fixed for redemption. In the event said bonds are to be redeemed prior to the maturity, the particular bonds to be redeemed shall be determined by lot and shall be redeemed only after notice of redemption setting forth the numbers of the particular bonds to be redeemed and the date fixed for redemption shall have been published in a daily financial newspaper published in the City of New York, N. Y., once a week for two consecutive calendar weeks, the date of the first publication of such notice to be at least thirty days prior to the date fixed for redemption. Said Refunding Bonds, Series A, shall bear interest on the principal face amount, thereof payable semiannually upon the first days of May and November of each year at the rate of two per centum per annum to November 1, 1940, thereafter at the rate of two and one-half per centum per annum to November 1, 1942, thereafter at the rate of three per centum per annum to November 1, 1945, thereafter at the rate of three and one-half per centum per annum to November 1, 1947, thereafter at the rate of four per centum per annum to November 1, 1952, thereafter at the rate of four and one-half per centum per annum to November 1, 1957, and thereafter at the rate of five per centum per annum until paid. Both principal and interest of said bonds shall be payable in lawful money of the United States

of America at Manufacturers Trust Company, New York City, N. Y., and said bonds shall be numbered and of the denomination to be hereafter prescribed by resolution of this Commission. If for any reason the City should fail to pay any semi-annual installment of the interest computed at the rates above described or should fail to pay into the sinking fund for the retirement of the Refunding Bonds, Series A, any installment hereinafter required and any such default should continue for a period of one year, or if the City should fail to pay said Refunding Bonds, Series A. at maturity,, then the holder of each Refunding bond, Series A, shall have the right to present said Refunding Bond, Series A, to the Manufacturers Trust Company, New York City, N. Y., and shall receive in exchange therefor a Refunding Bond, Series B, bearing the same bond number as that borne by the Series A Refunding Bond exchanged therefor and having attached thereto interest coupons maturing on and subsequent to the date of default at the same time or times as the interest coupons attached to the Series A Refunding Bond exchanged therefor.

"Said Refunding Bonds, Series B, shall be in the same form as the Refunding Bonds, Series A, except that they shall bear interest at the rate of six per centum per annum instead of the rates hereinabove set forth for said Refunding Bonds, Series A, and except as hereinafter provided, and shall have attached thereto a certificate evidencing the fact that the unpaid interest accrued to November 1, 1936, on the principal amount of the indebtedness originally surrendered for the Refunding Bond, Series A, is then due and payable and the holder of such Refunding Bond, Series B, shall be entitled to hold and enforce such bond according to its terms until such default is cured. Series B Refunding Bonds shall be numbered to correspond with the Series A Refunding Bonds and shall be of the same denominations as

may be prescribed for said Series A Refunding Bonds. No default shall be deemed cured as to any Series B Bond until the certificate attached to it has been paid in full and interest on said bond at the rate prescribed therein has been paid to the next succeeding interest payment date, or an amount sufficient to pay such certificate and interest in full has been deposited in a special account in said Manufacturers Trust Company for the sole purpose of paying such certificate and interest. The holder of said Refunding Bond, Series B, may retain the same until said default is cured and when said default is cured, interest upon said Refunding Bond, Series B, shall cease from and after the next interest payment date and the holder of said Refunding Bond, Series B, shall present the same to the said Manufacturers Trust Company which shall return to him the Series A Refunding Bond for which such Series B bond was originally issued and hold said Refunding Bond, Series B, in escrow until said Refunding Bond, Series A, is paid and cancelled unless it again becomes necessary to issue said Refunding Bond, Series B, because of a new default. Upon re-delivering Series A Bonds in exchange for Series B bonds, all interest coupons attached to Series A bonds representing interest accruing during the period for which interest was paid on the Series B bonds shall be detached by said Manufacturers Trust Company and cancelled.

"The rights hereby conferred upon the holders of Series A bonds to exchange them for Series B bonds in the event of a default shall not preclude the holder of Series A bonds from taking any steps to otherwise enforce the Series A bonds held by him or pursuing any other remedy thereon, nor shall the commencement of proceedings to enforce the Series A bonds preclude the holder from thereafter exchanging such Bonds for Series B bonds in the manner above prescribed.

"Taxes sufficient to produce the sums required for the payment of outstanding Refunding bonds and certificates according to their terms will be levied upon all property within the present territorial limits of the City of Lake Worth, which was not exempted from municipal taxation by the Constitution of the State of Florida as it existed immediately prior to November 6, 1934, and all of such property shall be subject to the specific tax levies hereinafter directed to be made," * * * The City Commission proceeded to the issuance of the bonds described in the resolution. To that end statutory validation proceedings were instituted, resulting in a final decree, as follows:

"This cause coming on this day to be heard upon the petition of the City of Lake Worth, a municipality in Palm Beach County, State of Florida, for the validation by this Court of refunding bonds Series A and Series B, described in said petition, and upon consideration thereof and the matters and things appearing on file and of record herein, the Court doth find and adjudge .

"(a) That upon the filing of said petition on the 12th day of August, 1938, and the presentation thereof to the Court on the 13th day of August, 1938, an order was on such 13th day of August, 1938, issued by this Court against the State of Florida, requiring it through its State Attorney in and for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, to show cause at this time and place why the said refunding bonds should not be validated and confirmed by decree of this Court as prayed in said petition, and

"(b) That a copy of said petition and of said order were served upon Phil O'Connell, the said Assistant State Attorney, on the 13th day of August, 1938, and upon Louis F.

Maire, the said State Attorney on the 13th day of August, 1938, and that the Clerk of this Court has published in a newspaper published in the City of Lake Worth, to-wit: in The Lake Worth Herald of August 19th, August 22nd and September 2nd, 1938, a notice addressed to the citizens and taxpayers of the City of Lake Worth requiring them at this time and place to show cause why the said Refunding bonds should not be validated and confirmed by decree of this Court, and

"(c) That the State of Florida, through the said Louis F. Maire, its State Attorney, has filed its answer to said petition presenting objections of law and fact to the validation of said refunding bonds, and

"(d) That no citizen or taxpayer of the City of Lake Worth and no other person, firm or corporation, except the State of Florida, has attempted to show any cause why said refunding bonds should not be validated and confirmed by decree of this Court, and

"(e) That this Court has examined, inquired into and considered the facts, law and equity of the said petition and the case made thereby

"Now, THEREFORE IT IS ORDERED, ADJUDGED AND DECREED BY THIS COURT AS FOLLOWS:

"1. That this Court has jurisdiction of the subject matter of and the parties to this cause, including all of the citizens and taxpayers of the City of Lake Worth, Florida.

"2. That the City of Lake Worth is indebted in the manner and upon the bonds and obligations described in Section 1 of the resolution annexed to: the petition..filed herein and marked Exhibit A, all of which constitutes a valid funded debt of said City, for the payment of which it is obligated to levy taxes without limitation of rate or amount upon all property within the present territorial limits of said City,

excepting only such property as was exempted from municipal taxation by the Constitution of the State of Florida as it existed immediately prior to November 6, 1934.

"3. That the City of Lake Worth has lawful right, power and authority to issue in its own name and deliver in exchange for the indebtedness described in Section 1 of the resolution annexed to the petition and marked Exhibit A, a like amount of refunding bonds Series A and a like amount of refunding bonds Series B in the manner more particularly prescribed by said resolution and for the payment of said refunding bonds the said City will be obligated to levy taxes upon all property within the present territorial limits of the City of Lake Worth which was not exempted from municipal taxation by the Constitution of the State of Florida as it existed immediately prior to November 6, 1934, without limitation of rate or amount and in the manner more specifically set forth in said resolution.

"4. That the covenants of the City of Lake Worth contained in said resolution annexed to the petition and marked Exhibit A to the effect that said City will collect the taxes to be levied for the payment of said refunding bonds in lawful money of the United States of America at the same time as other taxes levied by the City are collected, and that the City will not accept payment of any tax or part thereof levied against any parcel of property for operating or governing the City unless all taxes levied against the same parcel of property for the payment of said refunding bonds are paid at the same time, are valid and binding upon the said City and are sufficiently referred to in the said refunding bonds.

"5. That the covenants of the City of Lake Worth contained in said resolution annexed to the petition and marked Exhibit A to the effect that the rights and remedies for the enforcement of the indebtedness to be refunded by said re-

funding bonds will appertain to said refunding bonds and the taxes securing the same independently of any restrictions or limitations thereon enacted by the Legislature of the State of Florida since the incurring of the indebtedness to be refunded thereby are valid and binding upon the said City and are sufficiently referred to in the said refunding bonds.

"6. That it is hereby specifically found, determined and adjudged that all homesteads within the present territorial limits of the City of Lake Worth will be subject to taxation for the payment of said refunding bonds in the manner prescribed by said resolution annexed to the petition and marked Exhibit A notwithstanding the provisions of Section 7, Article X, of the Constitution of the State of Florida and Chapter 17060, Laws of Florida, 1935, and that the provisions of Chapter 17401, Laws of Florida, 1935, will not be applicable to the said refunding bonds or the taxes securing the same, and that the same refunding bonds will not be subject to any other legislation enacted by the legislature of the State of Florida impairing or modifying the obligations of said City on the refunding bonds or the covenants contained in said resolution and that each and every of the covenants and agreements contained in said resolution is valid and binding upon the said City.

"7. That said refunding bonds Series A and Series B authorized by the resolution annexed to the petition and marked Exhibit A have been duly authorized and that all matters, things, proceedings and conditions necessary to happen, be done, exist and be performed precedent to the issuance of said refunding bonds, have happened, been done, exist and been performed in due time, form and manner according to law and that said refunding bonds Series A and Series B are hereby validated and confirmed and the validity thereof shall never thereafter be questioned or contested.

"DONE AND ORDERED at West Palm Beach in the Fifteenth Judicial Circuit of the State of Florida, in and for Palm Beach County, this the 9th day of September, A. D. 1938."

The record has been examined and on consideration thereof no reversible error is made to appear. Therefore, the Decree is affirmed.

So ordered.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD, and CHAPMAN, J. J., concur.

THOMAS, J., not participating.