STATE, Appellant, v. CITY OF FORT MYERS, Appellee.

198 So. 814

En Banc

Opinion Filed November 22, 1940

136

*Clyde H. Wilson,* for Appellant;

*R. E. Kurtz & Parker Holt,* for Appellee.

BUFORD, J.—Appeal brings for review decree validating certain refunding bonds to be issued by the City of Fort Myers, Florida.

Appellant propounds and appellee concedes the propriety of nine questions for our consideration, viz.:

"1. Can municipal bonds issued pursuant to Charter providing for limited taxes be refunded into unlimited tax bonds where (1) the Legislature after issuance and sale of the bonds amends the Charter and removes the limitation and (2) subsequent to this again amends the Charter so as to again place in the Charter a tax limitation for debt service?

"2. Can a municipality issue refunding bonds and pledge a tax upon all homesteads located within the present territorial limits of the City for the payment of said bonds?

"3. Can a municipality issue refunding bonds and pledge a tax for the payment thereof on lands now lying within its territorial limits but which were not within its territorial limits at the time its bonds were originally issued without an approving vote of qualified electors who are freeholders or owners of such lands?

"4. Can a municipality issue refunding bonds and omit to pledge a tax for the payment thereof upon lands now lying beyond its territorial limits but which were within its territorial limits when the bonds were originally issued?

"5. Can a municipality issue refunding bonds and cove-

enant that the contractual rights and remedies for the enforcement of the indebtedness refunded by said refunding bonds and the taxes securing the same will apply and appertain to said refunding bonds independently of any restrictions or limitations enacted by the Legislature of the State of Florida, or otherwise, taking effect on or after November 6th, 1934?

"6. Can a municipality issue refunding bonds and covenant that upon default by the City the rate of interest of said refunding bonds will be increased without causing said bonds to be indefinite, uncertain and non-negotiable?

"7. In a bond refunding proceeding can a municipality contract to pay its refunding agent for his service out of the interest and sinking fund account established to service the indebtedness, such payment to be made only from surplus monies in said interest and sinking fund account after payment of interest due?

"8. In this municipal refunding proceeding did the circuit court have jurisdiction of the subject matter, the parties and of its citizens and taxpayers?

"9. Where certain lands were embraced within the territorial limits of the municipality at the time of the incurring of the bonded indebtedness, and where a portion of the said lands are not now embraced within the said territorial limits of the municipality, will the proposed refunding bonds be violation of Section 6, Article 9, of the Constitution, unless the said bonds contain an authorization to tax the lands which have been excluded together with a guarantee of the exercise of that right?"

In the beginning, let us say that the validity of the bonds involved is not affected by any determination of the answer to question 7. The answer to this question can only affect the contract to pay fiscal agents fees from a particular fund. Unquestionably the Board of City Commissioners may con-

tract to pay reasonable fees for such service as is shown to have been rendered in this case. The propriety of the source of funds from which such fees may be paid may be adjudicated independently of the adjudication of the validity of the bonds. Therefore, we do not now adjudicate that question.

It is admitted by all parties that of the bonds proposed to be refunded the original bonds designated

"UNLIMITED TAX BONDS

| "Date of issue | Designation | Date of validating decree |
|---|---|---|
| 12/ 1/1927 | Refunding Bonds, Series A | 12/ 2/1927 |
| 3/20/1929 | Refunding Bonds, Series B | 3/12/1929 |
| 12/ 1/1924 | Street Improvement Bonds, Series B | 11/ 3/1925 |
| 11/15/1928 | Spl. Assmt. Str. Imprvmt. Bonds, Series C | 12/26/1928 |
| 10/15/1929 | Spl. Assmt. Str. Imprvmt. Bonds, Series D. | 11/13/1929 |
| 12/ 1/1931 | Refunding Spl. Assmt. Bonds, Series A. | 11/ 9/1931 |
| 9/ 1/1930 | Refunding Bonds, Series C | 7/16/1930" |

are supported by an unlimited tax.

Two other issues involved here designated as

| (c) | 3/15/1924 | Storm Sewer Bonds | 5/ 1/1924 |
|---|---|---|---|
| | " | Sanitary Sewer Bonds | " |
| | " | Water Main Bonds | " |
| | " | Paving Bonds | " |
| | " | Gas Plant and Mains Bonds | " |
| (d) | 4/ 1/1926 | Sewerage System Extension Bonds | 5/31/1926 |
| | " | Water System Extension Bonds | " |

(d)   4/ 1/1926   Play Grounds and Recre-
                        ational Bonds            5/31/1926
        "              Gas Extension Bonds            "
        "              Fire Protection Bonds          "
        "              Incinerator Bonds              "

were before us in the case of State *ex rel.* Woman's Catholic
Order of Foresters v. City of Fort Myers, Fla. 143 Fla.
304, 196 Sou. 705, and in that case we held these issues to be
supported by an unlimited tax.

This leaves only two of the original issues, viz.:

(a)   7/ 2/1913   Wtr. Wks. and Fire Protec-
                        tion Bonds               5/24/1913
        "              Street and Sidewalk Bonds      "
(b)  10/1/1919   Wtr. System Extension Bonds 9/25/1919
        "              Street Paving Bonds            "
        "              Sewerage System Extension
                        Bonds                   9/25/1919"

open for adjudication as to whether or not they may be re-
funded by bonds supported by unlimited tax.

It is conceded that question 2 has definitely settled by this
Court, contrary to the contention of appellant, too many
times to require citation of cases.

We will now revert to the first question, *supra,* and here
discuss the issues of bonds of July 2, 1913, and of October
1, 1919. In regard to these the circuit judge held:

. "1.   That all of the outstanding bonds proposed to be
refunded were issued under the authority of general or
special acts which expressly authorize the levy of taxes
sufficient to pay the principal thereof and the interest
thereon, except the following issues, to-wit:

"Water Works and Fire Protection Bonds, dated July 2,
1913; Street and Sidewalk Bonds, dated July 2, 1913; Water
System Extension Bonds, dated October 1, 1919; Street

Paving Bonds, dated October 1, 1919; Sewerage System Extension Bonds, dated October 1, 1919.

"That the said bonds of July 2, 1913, and October 1, 1919, were issued under the authority of the Charter of the City of Fort Myers, to-wit, Chapter 5496, Laws of Florida, Acts of 1905, as amended, which limited the rate of taxation for the purpose of servicing the bonds authorized to be issued thereunder to a special tax not exceeding eight mills, but which limited the bonded indebtedness of said City to a total amount not exceeding six per cent (6%) of the assessed value of the taxable property therein; furthermore, said Act of 1905 was repealed by Chapter 10563, Laws of Florida, Acts of 1925, which said latter Act was repealed by Chapter 12743, Laws of Florida, Acts of 1927, which said latter Act of 1927 specifically authorizes the levy of a tax sufficient to pay the interest upon and provide a sinking fund for the retirement of all outstanding bonds or certificates of indebtedness of said City; and said latter Act of 1927 was repealed by Chapter 14052, Laws of Florida, Acts of 1929, which said latter Act of 1929 also specifically authorized the levy of a tax sufficient to pay the interest upon and principal of all outstanding bonds or certificates of indebtedness of the City; and said Chapter 14052, Laws of 1929, was made effective by approval of a majority of the qualified electors of said City at an election held June 18, 1929, as required by Section 80 thereof; and any attempted restoration of the limited tax provision of the original Charter by Chapter 18532, Laws of Florida, Acts of 1937, was invalid and inoperative as to bonds theretofore issued, and therefore said issues of July 2, 1913, and October 1, 1919, are supported by an unlimited ad valorem tax liability and may be refunded by the issuance of refunding bonds pledging an ad valorem tax sufficient to pay the interest on and the principal of said Refunding Bonds."

The record shows that the issuance of the bonds was authorized by a vote of the qualified electors and the record further shows that Chapter 14052, Laws of 1929, was made effective by approval of a majority of the qualified electors of said City at an election held June 18, 1929, as required by Section 80 of the Act.

In the case of City of Fort Myers v. State, 129 Fla. 166, 176 Sou. 483, the record did not show that the original bonds had been issued pursuant to the affirmative vote of qualified electors and in the case of State v. City of Manatee, 140 Fla. 248, 191 Sou. 529, Mr. Justice Terrell, speaking for the Court, said:

"In the case at bar it appears that all the original bonds issued prior to the effective date of Chapter 10891, Acts of 1925, were issued by an approving vote of the freeholders while, in the Fort Myers case, it did not appear that the bonds were so issued."

In that case we also appeared to give effect to the provisions of Chapter 18532, Acts of 1937, as differentiating the bond issues here under consideration from those which were under consideration in the Manatee case. Except for the provisions of Chapter 18532, *supra,* we would unhesitatingly hold that this case is ruled by the City of Manatee case, *supra,* which finds support in State v. City of Inverness, 137 Fla. 629, 188 Sou. 767, State v. City of Punta Gorda, 144 Fla. 73, 197 Sou. 734; State v. City of Auburndale, 144 Fla. 212, 197 Sou. 739; State v. Special Tax School District No. 7-B of Santa Rosa County, 131 Fla. 603, 179 Sou. 683; State v. City of Palmetto, 140 Fla. 252, 191 Sou. 531; State v. City of Melbourne, 135 Fla. 870, 185 Sou. 850; State v. City of Arcadia, 137 Fla. 146, 187 Sou. 771.

Here we have a case where bonds were issued supported by a limited tax. Later the limitation was by legislative

Act eliminated. This was within the power of the Legislature, under Section 8, Article VIII, Constitution. See State v. City of Manatee, *supra,* and other cases cited, *supra.* The holders of original bonds under this provision could coerce the taxing authorities to levy and collect millage sufficient for the debt service of such bonds, not upon the contract rights as they originally existed but upon the statutory right which was created after the issue of the bonds and which thereby became a part of the contract. Therefore, refunding bonds could thereafter be issued without an approving election supported by the unlimited tax then authorized by statute.

Practically the same question was presented in the case of State v. City of Inverness, *supra,* as to an issue of bonds under date of January 1, 1922, and we here follow our opinion and judgment in that case. So whatever was said in the case of City of Fort Myers v. State, *supra,* which may appear to be in conflict with our present holding is overruled.

Question 3 must be determined adversely to appellant's contention upon authority of the opinions and judgments in the cases of State v. City of Miami, 103 Fla. 54, 137 Sou. 261; State v. City of Fort Pierce, 133 Fla. 424, 182 Sou. 799, and State v. Jensen Road and Bridge District, opinion filed October 15, 1940, 144 Fla. 442, 198 So. 105.

The fourth question as stated, *supra,* is not in perfect accord with facts shown by the record.

The record in this case shows that in the refunding agreement and in the face of the prescribed form to be used for the bonds proposed to be issued the issuing authority specifically reserve the right to "levy such taxes as might lawfully be imposed for the payment of bonds and interest thereon upon any and all property heretofore embraced

within the territorial limits of the City at the time of the in-curring of the outstanding bonded indebtedness to be re-funded . . . which is not now embraced within the existing territorial limits of the City." Thus, it will be seen that the taxing authority has not omitted to pledge a tax upon property not now included in the territorial limits, but it has, in effect, renewed and extended the original bond contract by reserving whatever rights it may have legally to proceed against these lands. This is just what was done in regard to the bonds involved in the case of State v. City of Lake-land, 132 Fla. 489, 180 Sou. 754. See also A. C. L. R. R. v. City of Lakeland, 130 Fla. 72, 177 Sou. 206; State v. City of Auburndale, 144 Fla. 210, 197 Sou. 739. This case is ruled in this regard by what is said in the Lakeland case, *supra.*

The fifth question is just a statement of No. 2 in a dif-ferent way. The covenant is to all intents and purposes like the covenants involved in the cases of State v. City of Melbourne, *supra;* City of Lake Worth v. State, 135 Fla. 68, 184 Sou. 681, and was approved as valid in those cases. Indeed, as all the original bonds involved herein were issued prior to November 6, 1934, the challenged covenant adds nothing to the legal status of the bond obligation.

Question No. 6 may be stated differently, thus: Can a municipality issue refunding bonds and covenant that upon default by the City the rate of interest of said refunding bonds will revert to the original rate borne by the bonds being refunded without causing said refunding bonds to be indefinite, uncertain and non-negotiable?

This question has been before us several times and de-termined adversely to the contention of appellant and, upon authority of our former opinions and judgments in this re-gard, we hold that the question must be answered in the affirmative. See State v. Inverness, 137 Fla. 629, 188 Sou.

767; State v. Special Road and Bridge District No. 4 of DeSoto County, 133 Fla. 119, 182 Sou. 583; Bay County v. State, 116 Fla. 656, 157 Sou. 1.

We have referred to question No. 7 hereinbefore. Appellant insists that this provision of the contract should now be held invalid, relying upon the opinions and judgments in cases of Taylor v. Williams, 142 Fla. 402, 195 Sou. 175, and W. J. Howey Co. v. Williams, 142 Fla. 415, 195 Sou. 181. Those were cases in which it was sought to enjoin the collection of taxes and were not validation suits.

In this case there is no effort to include in the refunding bonds a sufficient amount to pay the fees of the fiscal agents; nor is there any agreement to levy a tax sufficient to pay interest, create a sinking fund and *to pay fees of the fiscal agents*. The agreement is that the City will pay the fiscal agents a sum equal to 2% of the amount of bonds refunded and further that it will pay this amount from surplus which may accrue in the fund with which to pay interest and to create the sinking fund. If the latter part of the agreement, that is to pay from the surplus in the stated accruals, is invalid the taxpayer has the same remedy which existed in favor of Taylor and W. J. Howey Company in the suits above referred to.

The factual conditions, according to the record, are different in this case to those which existed in the two cases last mentioned. In this case there has been no abdication of the power or authority of the City Commission; nor has there been any delegation of the power or discretion of the City Commission to the fiscal agents. That the administrative officers charged with duties of the sort involved here may pay reasonable fees for the services of fiscal agents to assist them in accomplishing the desired result has been upheld by us in Pierce v. Isaac, 134 Fla. 666, 184 Sou. 509; City of Miami v. State, 135 Fla. 598, 190 Sou. 774. See also

City of Fernandina v. State, 143 Fla. 802, 197 Sou. 454. In that case there was involved the legality of the payment of fees for a different sort of service to that which is involved here and in the other cases cited above. But, in that case, this Court upheld the payment of fees to agents rendering a public service to the City.

The record in the instant case shows that the operation of the refunding program, if and when the same is carried out according to its tenor and effect, will result in a saving to the City of something more than one-half million dollars.

· Question No. 8, it will be observed, appears to challenge the jurisdiction of the Court over the subject matter and the parties including the citizens and taxpayers. It appears from the record that all things have been done which are required to be done in cases of this kind and the appellant has not pointed out any matter or thing wherein the Court failed to acquire jurisdiction of the subject matter and parties.

We think that the contention presented by question No. 9 has been adequately covered, *supra.*

Our conclusion is that the decree of the circuit court is without error and should be affirmed.

It is so ordered.

Affirmed.

TERRELL, C. J., WHITFIELD, CHAPMAN and THOMAS, J. J., concur.

BROWN, J., dissents in part.

BROWN, J. (dissenting in part).—I dissent from the conclusion reached with reference to the propositions embraced in the first question propounded by the appellant.