THOMAS, Justice.
The County Commissioners of Okaloosa County were contemplating the issuance of bonds, the proceeds of which were to be used for the construction of a courthouse and hospital. To that end they negotiated with the appellants about representing the board in the steps to be taken preliminary to sale of the bonds. Eventually, 1 October 1952, the appellants addressed a letter to the board referring to the proposed bond issue and detailing the services they would perform and the compensation they would expect. Specifically, appellants were to employ recognized bond attorneys to render an opinion on the validity of the bonds, were to furnish all necessary resolutions authorizing the issue and advice concerning their passage. The appellants were to have the bonds printed and validated, and were to give interested buyers complete information so that competitive bidding would produce the best possible price for the securities. These services were offered for 1.5% of the principal amount of the courthouse bonds and 1.2% of the hospital bonds “plus local attorney’s fees except for $300.00 at the time each issue of bonds are taken up and paid for by the purchaser.”
Appellants’ offer was submitted to the board and was endorsed: “The above proposal, after being submitted to the Board of County Commissioners was upon motion made and duly seconded, and upon a vote taken, ordered accepted.” The acceptance was signed by the Chairman of the Board of County Commissioners and attested by the Clerk of the Circuit Court.
According to their complaint the appellants fully performed their obligations under the contract; the bonds were validated, advertised for sale and sold. On the day set in the notice two bids were received, one from appellants and one from another reputable dealer in securities. Upon tabulation of the bids, it was ascertained that the bid of appellants was higher and better and appellants, therefore, received the bonds in exchange for the amount they bid.
Thereafter the appellants presented a bill for the amount claimed to be due for their services under the contract and the appellee refused to pay it, so this action was commenced.
The appellee moved to dismiss the complaint on the ground the appellants, as successful bidders for the bonds, were prevented by public policy from recovering on their contract, and had waived their rights under the contract when they became purchasers. The circuit judge granted the motion to dismiss and subsequently entered judgment for the appellee.
There was no barrier to the employment of the apellants in the first instance to act as fiscal advisors to the board *790 to insure the valid issuance of the bonds and the sale of the bonds for the best price. State v. City of Ft. Myers, 145 Fla. 135, 198 So. 814; City of Avon Park v. Sullivan, Nelson & Goss, Inc., Fla., 50 So.2d 122. The contract is silent on the matter of the privilege of the agents to compete in the bidding. The question, in the last analysis is whether their success in the capacity of bidders precludes their recovery for services rendered in the capacity of advisors.
The appellee relies entirely on the opinion of this Court in City of Miami v. Benson, Fla., 63 So.2d 916, 919, to support its position that the fiscal advisors should not be permitted to unite their personal representative characters in one transaction so that their personal interest would conflict with the interest of the county.
In the cited case, the corporation employed to advise the city represented through its vice-president that it had juggled figures for the purpose of confusing people about the interest rate, and it was alleged in the bill to enjoin the sale “that this juggling of figures admittedly to confuse other bond-buying houses prevented the City of Miami from having any knowledge of the interest rate * * * [and was] for the purpose of not permitting it to appear what profit on the re-sale of [the] bonds would be made by the corporation which was the agent of the City.” We have quoted from the opinion. The corporation submitted a proposal to buy the bonds at private sale for a negotiated price and a negotiated interest rate — all while it was in the employ of the City as advisor with the duty in that capacity of assisting the city in obtaining the highest price for the bonds at the lowest interest rate. In the opinion of Mr. Justice Mathews he observed: “We are only called upon to pass upon the legality of a private sale to cm advisor, employee or agent, when such advisor, employee or agent has an interest in the contract limited to $54,000 if a sale is made to someone else, and with the ‘sky the limit’ if sold to it.”
We are unable to see the analogy of that case to this. There was not, so far as the record discloses, any secret private dealing with the employing board to the end that the employees would be given an advantage in procuring the bonds. On the contrary, notice of the sale was given in the Daily Bond Buyer, a recognized medium for circulating information about impending bond1 sales. A brochure of information regarding the proposed issue was sent by mail to-seventy-two dealers in securities in at least thirteen states, including seventeen dealers located in Florida. When the bids were received, they were sealed and when they were opened the appellants’ bid was higher. We find nothing in such procedure to justify invoking against the appellants the ban of public policy and we do not think that the investment made of their talent and time and purse would justify the harsh rule that simply because they made a bid, they forfeited the claim for their services. Were we to take the view that their bid was invalid because they were disqualified, then-the county would lose the difference between their bid and the bid of their competitor.
We have discovered nothing in our decisions that prevent our holding that the transactions involved here were valid and that the appellants we're free of the charge of duplicity. We think they had a clear right to enter the public competition for the purchase of the bonds without surrendering their claim for services under their contract with the county.
Reversed.
MATHEWS, C. J., and HOBSON and DREW, JJ., concur.