Buddy C. Alexander Clerk Circuit Court Punta Gorda
QUESTIONS:
1. May a partially self-insured county delegate authority for the settlement of tort claims within its self-insured portion of coverage to the adjusters of its excess liability insurance carrier?
2. If the answer to question 1 is in the affirmative, may funds of limited amount be placed in escrow with the insurance carrier to provide for payment of the claims against which the county is self-insured?
3. If the answers to questions 1 and 2 are in the affirmative, may the adjuster be authorized to draw on the funds and account for the drafts after the fact?
SUMMARY:
A board of county commissioners, in the absence of statutory authority, cannot delegate by contract its authority to approve, compromise, and pay claims against the county or authorize settlement agreements on behalf of and binding on the county for claims payable by the county by an excess insurance carrier or its claims adjuster. In addition, the county is not authorized to make an initial lump-sum disbursement of county funds in escrow with such claims adjuster to be deposited by him in a county depository with payments therefrom for claims against the county to be made in the discretion of the excess insurance carrier's adjusters and without preaudit review of the clerk and the board of county commissioners, nor can the county bind itself to reimburse the escrow account with county funds for payments made by the adjuster in settlement of claims payable only by the county. Such custodianship and method of disbursement of county funds are not provided for by any general law as required by the Constitution, and such payments or disbursements by such claims adjuster from an account in a county depository are violative of s. 136.06, F. S., and do not adequately preserve county control over public funds or the preauditing review required by law.
AS TO QUESTION 1:
As a general rule, claims against the county are subject to compromise, and the governing body impliedly possesses the necessary power and discretion — in the absence of bad faith, fraud, collusion, or other vitiating elements — to settle suits or claims against the county. 20 C.J.S. Counties ss. 303-305. Cf. AGO's 060-90 (approving county compromise of disputed claims owed
county) and 079-64. Put another way, if the authority to incur and pay a particular obligation rests with the governing body, thenthe governing body in its discretion may settle or compromise the amount of the claim. 15 C.J.S. Counties s. 336. See s. 2, Ch. 79-139, Laws of Florida, creating s. 111.071, F. S., which authorizes counties and others in certain circumstances to pay any compromise or settlement of any claim or litigation arising under s. 768.28, F. S.
Noncharter counties are limited in their powers to those which have been expressly provided or are necessarily implied to give meaning and effect to those expressed powers, and the governing body of a county may not delegate governmental powers involving the exercise of judgment and discretion. Crandon v. Hazlett,26 So.2d 638 (Fla. 1946); AGO's 078-95, 078-130, and 079-9; cf. AGO 078-77. Referring to the powers of county commissioners, the Florida Supreme Court has stated:
 An express power duly conferred may include implied authority to use means necessary to make the express power effective, but such implied authority may not warrant the exercise of a substantive power not conferred. [Molwin Inv. Co. v. Turner, 167 So. 33 (Fla. 1936).]
Thus, if the delegation in question is not specifically authorized or necessarily implied from some specific statutory authority, the county is without the power to effect such a delegation.
Section 768.28, F. S., as amended, Florida's Waiver of Sovereign Immunity Law, permits the state and its subdivisions, including counties, to be liable in tort for amounts within statutory limits provided in that section. Subsection (13) provides in pertinent part:
 The state and its agencies and subdivisions are hereby authorized to be self-insured, to enter into risk management programs, or to purchase liability insurance for whatever coverage they may choose, or to have any combination thereof, in anticipation of any claim, judgment, and claims bill which they may be liable to pay pursuant to this section. . . . (Emphasis supplied.)
This specific statutory authority to be self-insured, to purchase insurance, and to pay claims (within specified limits) for tort liability is additional to other authority given to the county governing body, such as s. 455.06, F. S., which authorizes counties, inter alia, to purchase liability insurance. See also s.768.28(10), F. S. Section 125.01(1)(b), F. S., authorizes the county governing body to provide for the prosecution and defense of legal causes in behalf of the county, and s. 125.15, F. S., authorizes and requires the county commissioners to sue and be sued in the name of the county. Compare s. 768.28(3), which expressly authorizes a county, in its discretion, to request theassistance of the Department of Insurance in the adjustment andsettlement of any claim under that section, and s. 17.041, F. S., authorizing the Department of Banking and Finance to adjust and settle certain claims owed to the county when certified by the Auditor General.
None of these sections, nor any other that has been brought to my attention, authorizes the county expressly or by necessary implication to delegate its authority in the manner you havedescribed to settle those claims against the county which are payable only by the county. The authority given in s. 768.28(13), F. S., for the county to contract for or purchase liabilityinsurance does not authorize agreements with the insurance carrier for a substantially different purpose. Molwin Inv. Co. v. Turner, supra; AGO 073-374 (fire district power to purchase land and construct buildings does not imply the power to borrow funds);cf. Gessner v. Del-Air Corporation, 17 So.2d 522, 523 (Fla. 1944); Peters v. Hansen, 157 So.2d 103 (2 D.C.A. Fla., 1963). Moreover, the delegation of authority to the claims administrator or insurance adjuster to enter binding settlement agreements for claims payable by the county from county funds and not by the insurance carrier cannot be considered necessary, indispensable, or incidental to the express and specific authority vested in the county to be liable for and pay those claims from county funds.
Of course, counties may employ agents to accomplish public purposes under the supervision and direction of the county commission when the requisite control and discretion are retained by the county. Miller v. Ryan, 54 So.2d 60 (Fla. 1951); Leedy, Wheeler Alleman, Inc. v. Okaloosa County, 77 So.2d 788 (Fla. 1955); Peters v. Hansen, supra; and 20 C.J.S. Counties s. 180, at 1014. See also AGO 078-130, discussing the power of the county to employ a nonprofit corporation as an advisory committee to accomplish an authorized county purpose. Also, in some circumstances, under the doctrine of ratification, a county may in its discretion ratify an agreement entered by an unauthorized person, AGO 078-95 (settlement agreement negotiated by an unauthorized officer). However, any attempt to ratify a forbidden contract would be futile. Hooten v. Lake County, 177 So.2d 696 (2 D.C.A. Fla., 1965); Fruchtl v. Foley, 84 So.2d 906 (Fla. 1956); and City of Stuart v. Green, 23 So.2d 831 (Fla. 1945). Thus, a county may employ and enter into a contract with an agent to negotiate and bargain for a recommended settlement amount, so long as the county retains the discretion to approve, modify, or disapprove any settlement reached by its agent on behalf of the county and the county is not bound by the terms of any such agreement or settlement.
Finally, when there is doubt as to the existence of authority, it should not be assumed. White v. Crandon, 156 So. 303 (Fla. 1934), and Hopkins v. Special Road and Bridge Dist. No. 4, 74 So. 310
(Fla. 1917). Thus, I have the opinion that a county partially self-insured pursuant to s. 768.28(13), F. S., may enter into a contract with an insurance adjuster to negotiate and recommend a settlement amount for a tort claim against the county, but the county could not delegate authority to that adjuster to enter a settlement agreement on behalf of the county, nor could the county agree in advance to be bound by the terms of such an agreement when the power and discretion to settle the particular claim are vested in the county and the claim is payable only from county funds.
AS TO QUESTIONS 2 AND 3:
My negative answer to your first question compels a negative answer to questions 2 and 3, but there are additional points which must be made concerning the handling of county funds in the manner you have described.
Section 1(b), Art. VIII, State Const., provides that the `care, custody and method of disbursing county funds shall be provided by general law.' As the Supreme Court emphasized in Alachua County v. Powers, 351 So.2d 32, 38 (Fla. 1977), this constitutional provision means that `[t]he care, custody and method of disbursing county funds must be provided by general law.' (Emphasis supplied in part by the court and in part by the writer.) The Constitution also provides that the clerk of the circuit court shall be ex officio clerk of the board of county commissioners, auditor, recorder, and custodian of all county funds unless otherwise provided by county charter or special law. Section 1(d), Art. VIII, State Const. See also ss. 125.17 and 28.12, F. S. Furthermore, s. 129.09, F. S., provides that the clerk, serving as county auditor, shall be personally and criminally liable for signing any warrant to pay county funds for claims against the county not authorized by law.
Chapter 136, F. S., pertains to `County Depositories' and provides duties of the county (board of county commissioners and other officers) with regard to depositing, keeping, recording, accounting for, and drawing funds from county depositories. Note, particularly, s. 136.06(1), which provides in pertinent part:
 All money drawn from any depository qualified under the provisions of this chapter shall be upon a check or warrant issued by the board or officer drawing the same, said check or warrant, both as to number and amount, person to whom drawn and purpose for which drawn shall be recorded in the minutes of the board having ordered the same drawn, and each check or warrant so drawn shall be signed by the chairman of said board, attested by the clerk or secretary of said board with the corporate seal thereof affixed . . . . (Emphasis supplied.)
Thus, it is clear that the clerk is sole custodian of county funds (unless otherwise provided by county charter or special law, s. 1(d), Art. VIII, State Const.) and that any withdrawal of county funds from a county depository must be made upon a check or warrant issued by the board (of county commissioners), signed by the chairman of the board, and attested by the clerk. Since you have stated, and the submitted agreement provides, that the funds in question are `county property' to be placed in a county depository, their disbursement to be lawful must be made in accordance with s. 136.06 and other applicable provisions of general law. Section 1(b), Art. VIII, supra. To this it may be added that, when the controlling law, e.g., s. 136.06, provides the manner of doing a thing, it impliedly prohibits its being done in any other way. Alsop v. Pierce, 19 So.2d 799 (Fla. 1944). I am aware of no general law authorizing county funds to be placed — in escrow or otherwise — in the custody of and subject to disbursement by an insurance carrier's adjuster or claims administrator. In the absence of statutory authority, county funds cannot be handled and disbursed in this manner. Section 1(b) and (d), Art. VIII, supra, and Alachua County, supra. Therefore, any payments by the adjuster or claims administrator of county funds from a county depository would be in direct violation of the procedures prescribed in s.136.06 for the withdrawal of funds from a county depository and would not be authorized or legal expenditures.
In Alachua County v. Powers, supra, the court discussed the clerk's auditing functions in terms of the personal and criminal liability placed on the clerk, pursuant to s. 129.09, F. S., for signing any illegal warrants.
 The clerk, as auditor, is required by law to refuse to sign and deliver a county warrant for an unlawful expenditure, even though approved by the board of county commissioners. . . . Although an appropriation of county funds may serve a county purpose, there must be some type of pre-audit review of the disbursement in order to be sure that the funds will not be used for an unlawful purpose. [351 So.2d at 36; emphasis supplied.]
Thus, even payments authorized by the board of county commissioners, if made pursuant to an unauthorized contract or made to reimburse unauthorized expenditures, could properly be challenged by the clerk as illegal expenditures.
The Alachua County case also established that the preauditing responsibility is shared by the clerk and the board of county commissioners, 351 So.2d 37. Accord: White v. Crandon, supra, in which the court referred to `[t]he duty of county commissioners to comply with the indispensable legal formality of seeing to it that every warrant issued by the county commissioners for the payment of a county claim is a proper and legal charge against the county . . . .' 156 So. at 305.
Finally, I would note that the initial $10,000 of county funds to be deposited in escrow with the claims administrator in a county depository also appears to be in the nature of a lump-sum disbursement of county funds to be expended by the claims administrator without preaudit review by the clerk and county commission which this office has repeatedly concluded may not be lawfully made in the absence of express statutory authorization.See AGO's 077-97 (county funds to district mental health board); 073-113 (county funds to little league committee); 071-150 (county funds to Red Cross blood bank); 064-96 (county funds to hospital district for care of indigents); 059-92 (county funds to state or county department of public welfare); and 056-151 (county funds to various welfare and nonprofit organizations). Cf. AGO's 078-68 (state community college funds to foreign universities to reimburse public officers and employees of state community college for travel expenses) and 078-97 (information necessary to demonstrate legality of county expenditure for postaudit review of Auditor General). But see AGO's 073-40 (county funds to nonprofit corporation for services to the elderly) and 075-93 (state funds to Civil Air Patrol). Compare s. 160.01, F. S., expressly authorizing lump-sum payment of county or municipal funds to regional planning councils.
Therefore, I conclude that a board of county commissioners, in the absence of statutory authority, cannot delegate by contract its authority to approve, compromise, and pay claims against the county or authorize settlement agreements on behalf of and binding on the county for claims payable by the county by an excess insurance carrier or its claims adjuster. In addition, the county is not authorized to made an initial lump-sum disbursement of county funds in escrow with such claims adjuster to be deposited by him in a county depository with payments therefrom for claims against the county to be made in the discretion of the excess insurance carrier's adjusters and without preaudit review of the clerk and the board of county commissioners, nor can the county bind itself to reimburse the escrow account with county funds for payments made by the adjuster in settlement of claims payable only by the county. Such custodianship and method of disbursement of county funds are not provided for by any general law as required by the Constitution, and such payments or disbursements by such claims adjuster from an account in a county depository are violative of s. 136.06, F. S., and do not adequately preserve county control over public funds or the preauditing review required by law.
Prepared by:
Carol Z. Bellamy Assistant Attorney General